THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS ARROYAVE, Also Known as HENRY FORTWL, Appellant.

First Department, July 13, 1978

## APPEARANCES OF COUNSEL

*Mark Lemle Amsterdam* for appellant.

*Sanford Siegel* of counsel *(Robert M. Pitler* with him on the

brief; *Robert M. Morgenthau, District Attorney,* attorneys), for respondent.

## OPINION OF THE COURT

FEIN, J.

The issue on this appeal is whether defendant was deprived of his right to counsel when the trial court denied a request by Frank Bress, an attorney who appeared from the New York University Criminal Law Clinic (Clinic), purporting to represent defendant, to delay the trial to allow him sufficient time to prepare. The application was made after the trial had commenced with preliminary instructions to the jury. Defendant at the time was represented by counsel appointed pursuant to article 18-B of the County Law and rule 606.1 of the Appellate Division, First Department (22 NYCRR 606.1), who had represented him throughout from the time of the indictment. A review of the record demonstrates that defendant's right to counsel was not abridged. There is no basis shown, as suggested by the dissent, why this appeal should be held in abeyance pending a hearing to determine whether defendant intended to retain Mr. Bress and whether Mr. Bress agreed to represent defendant.

Defendant was arrested on September 9, 1974, charged with 12 counts arising out of the sale and possession of cocaine and marihuana on three separate occasions. On September 11, 1974, article 18-B counsel was assigned. Two months later, in November, 1974, defendant's request that new counsel be assigned was denied. Defendant's next request for assignment of new counsel on January 29, 1975 was denied. Three weeks later, on February 19, 1975, defendant submitted a written motion for new counsel to be assigned which was also denied. So far as appears the denials were well founded. Defendant's requests were based on the refusal of assigned counsel to make motions, which were unwarranted, or to obtain a reduction of bail.

On April 28, 1975, when the case was called for the purpose of permitting defendant and his attorney to hear tapes in the District Attorney's office, defendant declined to listen to the tapes. He asserted the District Attorney would comply with the law and that the transcriptions which his attorney had furnished him were sufficient. He asked for an adjourned date to begin trial. When defendant's assigned attorney stated he thought it necessary to listen to the tapes, defendant asked

that the attorney be relieved and a Legal Aid attorney who specializes in narcotics be assigned. When the court declined to do so after explaining that the assigned article 18-B attorney was well qualified, defendant referred to his prior motions for new assigned counsel. He gave no reasons. There was then spread on the record the fact that assigned counsel had appeared for defendant on 19 occasions and had conferred with defendant on each occasion, that they had listened to certain tapes together in the District Attorney's office, that various other steps on defendant's behalf were taken with his knowledge. Counsel had even argued defendant's *pro se* omnibus motion. Their differences were over counsel's refusal to make a motion to suppress the tapes and to make a *Wade* motion, neither of which was warranted. The attorney stated he would be ready for trial as soon as he heard the remaining tapes. The court noted, contrary to defendant's contentions, that the attorney had made several bail applications which were denied.

The court denied defendant's application for new assigned counsel and directed both sides to get ready for trial quickly. Defendant refused to listen to the tapes or to return the transcripts to the attorney. The District Attorney provided additional copies.

The defendant was later to assert falsely that the Judge had promised to assign new counsel. Defendant did not then or at any other time tell the court that he had, in early April, 1975, written to the Clinic seeking assistance in his defense. The text of the letter is not part of the record so that it does not appear whether defendant was seeking advice or new assigned counsel, despite the suggestion in the dissent that defendant sought to retain Mr. Bress to represent him.

On June 20, 1975, defendant's *pro se* motion to dismiss the indictment was denied.

On June 30, 1975 defendant filed a complaint against his assigned attorney with the Grievance Committee of the Bar Association. On September 4, 1975, defendant moved for more effective representation to require his assigned counsel to assist him in filing *pro se* and other motions. On September 18, 1975, the case was called for trial before Justice COON. The People were ready and defendant's assigned counsel stated the defendant was ready, except that defendant wished his *pro se* motions to be heard. When the court inquired whether defendant wished to make a *pro se* argument, the defendant re-

sponded: "The attorney has the motion. He has read the motion. He can argue the motion."

The attorney then proceeded to argue the motion which was properly denied in all respects. Defendant then asked that the record show that the attorney refused to make the motion just decided. He then asserted that Judge AARONS had indicated he was going to assign new counsel, which, as has been noted, was contrary to the fact.

When the court was apprised of this, defendant again asked for new assigned counsel, which the court refused after examining the history of the case. The court explained that defendant had not shown any reason for the assignment of new counsel and that the record showed assigned counsel was fully competent. The court advised defendant he could proceed *pro se* if he wished. Defendant stated: "Your Honor, I prefer to proceed to trial as my own—on my own, pro se."

The court then assigned the case to a trial part and advised defendant to tell the Trial Judge about his desire to proceed *pro se,* so that the proper formalities to that end could be accomplished. Defendant asked for a copy of the minutes which were directed to be furnished.

The parties then proceeded to Part F for trial before Justice PECORA, where an audibility hearing was held. Assigned counsel participated and obtained rulings on behalf of defendant. Defendant also raised some questions. The case was adjourned to Monday, September 22, 1975, for further audibility hearings and trial. Assigned counsel again participated on behalf of defendant, and interposed certain objections.

Defendant then asserted that the Calendar Judge had relieved assigned counsel and that assigned counsel had also been previously relieved by another Judge. He then stated: "I like to represent myself in this case so I ask you for some time to prepare my defense."

The court refused an adjournment and explained that it would be unwise for defendant to represent himself. Defendant insisted that other Judges had told him new counsel would be appointed. He referred to Justice AARONS, who had clearly and plainly denied his application and also to Justice PECORA and Justice COON both of whom had clearly and plainly denied his application. He again asserted that he wished assigned counsel to be relieved because counsel had made no motions and had not obtained a bail reduction. He

stated: "I don't want to try my own case, but the Court force me to do it."

The court denied defendant's application for new counsel and directed that the case proceed to trial the next day, September 23, 1975.

The record does not support the suggestion in the dissent that the applications were treated as an annoyance. At least three Judges carefully listened to and considered defendant's applications for the assignment of new counsel. There was no merit to any of them. A defendant requesting assigned counsel may not dictate the choice. He has a right to assignment of new counsel on a proper showing, not made here.

On September 23, 1975, while jury selection was in process, Mr. Bress of the Clinic appeared and advised the court of defendant's April, 1975 letter request for assistance. Mr. Bress stated that he responded to that letter on April 10, 1975, seeking information from defendant about his case. The April 10 letter from Bress to Arroyave, however, was apparently held by the Department of Corrections until September 19, 1975, when it was given to defendant. Upon receipt, defendant responded, advising Bress of the current status of the case. Bress thereupon ascertained when the case was scheduled to be heard and appeared in court on September 23, 1975, although the transcript incorrectly indicates that Bress made his appearance on October 3, 1975.

The colloquy between the court and Mr. Bress indicates quite clearly that Bress' primary purpose was to assist defendant in obtaining the appointment or assignment of new counsel. Although Bress initially told the court that he would appear as counsel, when the court advised him that the trial had already commenced, Bress responded that it would not be reasonable for him to try the case under such circumstances. He thereupon made application "for a delay of the trial to allow me sufficient time to prepare myself to try it." It is patent that the court, taking into consideration the numerous attempts by defendant during the past year to effect an assignment of new counsel, whenever trial was imminent, considered Bress' application to be an additional delaying tactic, one which came too late since the trial had already commenced.

The dissent would have the matter remanded for a hearing to determine whether defendant retained Bress, as opposed to having him assigned as counsel, and whether Bress agreed to

represent him. However, there is no basis in the record for any such hearing. We are in agreement that whether or not an attorney is in a retained capacity does not depend upon his receipt of a fee or some other form of compensation. An attorney may furnish free legal service to a criminal defendant and still be considered retained counsel. Here, Bress advised the court that he had spoken with defendant that day. He related the substance of the conversation and the prior letter from defendant to the Clinic as follows: "What the defendant discussed with me in the pen and in his letter, he told me he was dissatisfied with counsel then representing him and was attempting to have counsel relieved and new counsel *appointed.*" (Emphasis added.) The letter was apparently not preserved and has not been submitted for our review. Further inquiry by the court disclosed that Bress had never agreed to represent defendant. This is evident from the following colloquy:

"The Court: You wrote to him saying you want more *information* and perhaps you might represent him.

"Mr. Bress: Yes.

"The Court: You never did come in and sign a slip of paper saying that you in fact represent this defendant the first time. *(sic)*

"Mr. Bress: I never did."

On this basis Mr. Bress' statement: "I will try the case. I think it would be unreasonable to ask me to try the case this morning" does not demonstrate he had been retained or chosen by defendant to try the case.

Most significant is the fact that during this colloquy defendant did not express any desire to have Mr. Bress assume his defense. He voiced no objection when the court denied Mr. Bress' request to delay the trial to enable Bress to prepare. Defendant's silence is eloquent evidence that he had no desire to have Mr. Bress represent him, in view of the lengthy record on prior occasions when defendant freely and openly expressed his views to the court, although he was represented by counsel at the time.

As noted, he was never before hesitant in making oral and written applications for new counsel and other relief. Although the record would be more satisfactory had the court inquired of the defendant whether he wished Mr. Bress to

represent him, the failure to do so is not determinative as suggested in the dissent.

Under the circumstances, taking into account the willingness of defendant on prior occasions to make his desires known, the fact that he stood mute when Mr. Bress appeared is significant. His silence at that time compels the conclusion that his prior requests and motions to have counsel relieved and a new attorney assigned were mere delaying tactics. Since the trial had already commenced, any attempt at further delay would be a useless exercise.

The sequence of events gleaned from the record also supports the conclusion that defendant only sought Bress' assistance to effect assignment of new counsel and never actually intended to retain Bress.

This is further supported by the colloquy on September 30, 1975, seven days after Mr. Bress' appearance, and just before the opening statements to the jury:

"The Court: Mr. Fortwl, is it still your intention to try your own case?

"The Defendant: Your Honor, I will have the attorney as my attorney. I will be using Mr. Albert.

"Mr. Albert: For the record, the defendant told me this morning that he called his wife last night and he wants to apologize to me for rejecting me and now wants me to try his case; is that correct?

"The Defendant: Yes."

Once again there was no word from defendant about Mr. Bress.

There is no proof on this record that defendant attempted or purported to retain Mr. Bress. The conclusory assertion that defendant was deprived of his right to counsel is insufficient. Defendant's failure to offer any affirmative evidence on the issue is dispositive.

Although this has little bearing on the issue of the right to counsel, it is noted that it is not seriously contended that defendant did not receive effective representation by able counsel. The record reveals that the assigned attorney had appeared in court on 25 occasions and had conferred with defendant on each such court appearance. The transcript of the trial further reflects the fact that defendant received able representation, with detailed cross-examination and a careful

attempt by counsel to develop defenses of entrapment and duress.

We perceive no merit in defendant's challenge to the constitutionality of the mandatory drug sentencing laws (see *People v Broadie,* 37 NY2d 100, cert den 423 US 950).

Accordingly, the judgment, Supreme Court, New York County (PECORA, J.), rendered December 12, 1975, convicting defendant upon a jury verdict of two counts of criminal sale of a controlled substance in the first degree and sentencing him to concurrent terms of 15 years to life, should be affirmed.

SANDLER, J. (dissenting). On defendant's appeal from his conviction following a jury trial of two counts of criminal sale of controlled substances in the first degree and concurrent sentences of 15 years to life, the central issue is whether or not the defendant was denied his constitutional right to counsel of his own choosing. The relevant portions of the record strongly support the conclusion that this constitutional right was in fact violated. However, certain facts critical to this question are not developed in the record with sufficient clarity to permit a final determination at this time.

Accordingly, I believe the appeal should be held in abeyance pending a hearing in the trial court to develop more completely the relevant circumstances.

Defendant was arrested on September 9, 1974 following his indictment by the Grand Jury. On September 11, 1974, he was assigned an article 18-B panel attorney. Some two months later in November of 1974, the defendant requested the court to assign another attorney to him. The request was denied. This was followed by a series of similar requests by the defendant which were unquestionably a source of annoyance to various Trial Judges who were persuaded, correctly in my view, that his dissatisfaction with his assigned attorney was not reasonable.

The principle is, of course, well established that a defendant, not able to retain his own counsel, may not dictate the attorney to be assigned to him. Although I think it often prudent to permit a defendant dissatisfied with his first assigned counsel an opportunity to see how he gets along with another, I find nothing in the judicial response to these applications of any present concern. The principal significance for the issue before the court is that the defendant's varying applications, and the manner in which he pursued them,

unquestionably gave rise to a sense that he was a troublesome individual, which reaction was strengthened by his later application to be permitted to try the case *pro se.*

A time came when a jury panel was assembled for preliminary instructions preparatory to the selection of the jury. The date of this event is unclear. The transcript indicates that it occurred on October 3, 1975, but other information suggests that the true date was September 23, 1975.

In any event, the transcript discloses the appearance in court of Mr. Frank Bress, a lawyer with the New York University Criminal Law Clinic, who informed the trial court that in the beginning of April the defendant had written a letter to him "seeking my assistance in his defense. I wrote a letter to him dated April 10, in which I advised him if he gave me a bit more information about his case; adjourned date and brief description of the case, that I would investigate the situation and probably represent him."

Bress went on to say that he had learned that the letter written by him to the defendant had been withheld by the Department of Corrections until "September 19, four days ago" when it was given to the defendant who immediately wrote a letter describing the situation. Bress said he received the letter that very morning, determined where the case was, and "I am here to tell the court I will appear as counsel for the defendant." He stated that the defendant had discussed the situation with him that morning and told him of his "dissatisfaction with assigned counsel."

The court commented that he would not interrupt the trial "which has already commenced to permit you to make an application for any kind of adjournment," to which Bress responded that he understood that the trial was only at the stage of preliminary instructions.

The colloquy was concluded with the following exchange:

"The Court: I will substitute you right now in Mr. Albert's place and you can sit there and proceed with the selection of the jury.

"Mr. Bress: I think you are aware that would probably be less than good representation than he already has.

"The Court: What is your application?

"Mr. Bress: My application is for a delay of the trial to allow me sufficient time to prepare myself to try it.

"The Court: Your application is denied."

If, as seems likely, although not stated explicitly, the defendant in his conversation with Bress that morning had asked Bress to represent him, and the attorney had agreed to do so, subject only to the opportunity for a reasonable period to prepare the case, the court's refusal of any adjournment whatever would seem to me a clear violation of the defendant's right to counsel of his own choice. (Cf. *People v McLaughlin,* 291 NY 480, 482-483; *People v Gordon,* 262 App Div 534; *People v Faracey,* 46 Misc 2d 46.) No inquiry was made by the court as to how much time Mr. Bress would require for preparation. Nor was the defendant asked if he wished to retain Mr. Bress. The denial of any adjournment under the circumstances to an incarcerated defendant charged with an A-1 felony would have been justifiable only if a compelling factual basis existed for the conclusion that the appearance of Mr. Bress was merely a ploy by the defendant to delay or disrupt the trial. Nothing was developed in the course of the colloquy that morning that would remotely justify such a conclusion.

Moreover, the court had been informed that the defendant's efforts to secure counsel of his own choosing had been interfered with by the Department of Corrections which had withheld, for a period of some six months, a letter from Mr. Bress to the defendant relating to his representation of the defendant. The very fact that the defendant had sought to retain Bress some six months prior to the date the jury panel had been assembled refutes any contention that this was a last minute effort at delay. Indeed, the interference by a government department with the defendant's effort to secure counsel, if it in fact occurred, would by itself justify the conclusion that his right to counsel of his own choosing had been infringed.

It may be that the trial court was under the impression, because the attorney was associated with a "criminal law clinic," that the defendant was somehow seeking to circumvent prior judicial rulings by selecting his own "assigned" counsel. If so, the court would have been acting under a misunderstanding. The defendant had as much right to "retain" Mr. Bress as he would have had to "retain" any lawyer to whom he was in a position to pay a fee.

The fact that some days later the defendant indicated his willingness to be represented by originally assigned counsel does not alter the conclusion, suggested by the facts outlined

above, that he was effectively denied the right to counsel of his own choice.

What is clearly required is an evidentiary hearing to determine essentially two issues:

First, did the defendant retain Mr. Bress and did Mr. Bress agree to represent him subject only to the opportunity for a reasonable adjournment to prepare the case.

Second, if that in fact occurred, was the court justified under all the circumstances, including the apparent obstruction by the Department of Corrections of the defendant's efforts to secure counsel, in denying any adjournment whatever to newly retained counsel.

This appeal should be held in abeyance pending such a hearing.

LUPIANO, J. P., BIRNS and MARKEWICH, JJ., concur with FEIN, J.; SANDLER, J., dissents in an opinion.

Judgment, Supreme Court, New York County, rendered on December 12, 1975, affirmed.