**Harlan LANE, Appellant,**

v.

**Frank E. CHOWNING et al., Appellees.**

**No. 79–1209.**

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 8, 1979.

Decided Dec. 6, 1979.

Charles L. Honey, Honey & Rodgers, Prescott, Ark., for appellant.

Philip S. Anderson and Alston Jennings, Wright, Lindsey & Jennings, Little Rock, Ark. (argued), and John C. Calhoun, Little Rock, Ark., on brief, for appellees.

Before ROSS and STEPHENSON, Circuit Judges, and McMANUS, District Judge.*

ROSS, Circuit Judge.

In this appeal, Harlan Lane challenges the district court's[1] granting of directed verdicts in favor of all eight defendants and

---

* The Honorable EDWARD J. McMANUS, Chief Judge, United States District Court for the Northern District of Iowa, sitting by designation.

1. The United States District Court for the Eastern District of Arkansas, the Honorable Oren Harris presiding.

the denial of his motion for a new trial. The defendants in this suit are officers, directors, attorneys and a former employee of the Union National Bank of Little Rock, Arkansas. Lane, as former Chairman of the Board and Chief Executive Officer of the bank, charges the defendants with fraud, malpractice, destruction of and interference with prospective business advantage, breach of fiduciary duty and conspiracy to commit all of the above. At the conclusion of his case in chief, the district court determined that Lane had failed in his burden of proving these allegations, and directed the verdicts. Following the denial of his motion for a new trial, this appeal was filed.

A review of the history of this case demonstrates the weakness of Harlan Lane's position. He has been convicted by a jury under Section 215, Title 18, U.S.C.A., which makes it a crime to receive a fee or commission for procuring a loan for a third party while serving as an officer or director of a bank.[2] This court affirmed that conviction in *United States v. Lane,* 464 F.2d 593 (8th Cir.), *cert. denied,* 409 U.S. 876, 93 S.Ct. 127, 34 L.Ed.2d 129 (1972). In this action, however, Mr. Lane has sought to collect damages from the defendants for their part in a series of events which led up to the criminal prosecution—the same events and activities for which Lane has been convicted.

The relevant facts are as follows: In June of 1968, a group of investors organized by Lane and Donald P. Couch purchased a controlling interest in the shares of Union National Bank of Little Rock, Arkansas. Lane became the Chairman of the Board and Chief Executive Officer of the bank, and Couch was elected President. The same two men subsequently were responsible for the organization of La-Co, Inc., of which Lane was Chairman of the Board and Chief Executive Officer and Couch was President. It was intended that La-Co, Inc. would be used as a bank-holding organization and Lane arranged for La-Co, Inc. to purchase stock in the Union National Bank.

In order to raise money for the purchase of bank stock, La-Co, Inc. established a line of credit with Union National Bank and with the National Bank of Commerce in Dallas. The Dallas bank granted the credit subject to an agreement that Union National Bank would deposit with them a compensating noninterest-bearing balance of fifty percent of the loans to La-Co, Inc.

In October of 1969, Harlan Lane arranged for the Union National Bank to loan Wheel-Air, Inc., an Illinois corporation, one million dollars. La-Co, Inc. was to receive $125,000 to serve as guarantor of the loan. As a result of this questionable activity, the board of directors of the Union National Bank voted on October 31, 1969, to remove Lane and Couch from their respective positions in the bank's hierarchy. Their good judgment in this matter was subsequently borne out when Lane was prosecuted for his role in the Wheel-Air loan, convicted by a jury, and sentenced to a prison term.

Lane bases his claims for damages on the theory that the defendants participated in a conspiracy of silence which kept him from discovering the illegality of the loan, and thus fraudulently induced him to follow through with the illegal activities. This alleged conspiracy began when Lane claims to have asked an employee of the bank, defendant David Johnson, to seek advice as to the legality of the Wheel-Air loan from the bank's attorneys, defendants Frank

**2.** 18 U.S.C.A. § 215 reads as follows:

Whoever, being an officer, director, employee, agent, or attorney of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, of a Federal intermediate credit bank, or of a National Agricultural Credit Corporation, except as provided by law, stipulates for or receives or consents or agrees to receive any fee, commission, gift, or thing of value, from any person, firm, or corporation, for procuring or endeavoring to procure for such person, firm, or corporation, or for any other person, firm, or corporation, from any such bank or corporation, any loan or extension or renewal of loan or substitution of security, or the purchase or discount or acceptance of any paper, note, draft, check, or bill of exchange by any such bank or corporation, shall be fined not more than $5,000 or imprisoned not more than one year or both.

Chowning and W. P. Hamilton. Johnson supposedly obtained information that the transaction was illegal. Instead of reporting it to Lane, however, Johnson, the attorneys and the bank officers and directors allegedly initiated the conspiracy to keep the information from Lane, involve him in criminal activities, and provide grounds thereby for his removal as an officer and chairman of the board. Lane claims that the conspiracy was directed towards his financial and professional ruin. In addition, Lane claims that the injuries he suffered from this conspiracy were aggravated by the fact that the attorneys, Chowning and Hamilton, were his personal attorneys and had knowledge of his financial affairs. Lane charges that this breach of the client-attorney relationship constituted malpractice. Furthermore, Lane claims that the activities of the board of directors constituted a breach of their fiduciary duty.

Lane finally argues that the malpractice of the attorneys, the breach of fiduciary duties, the frauds and the conspiracy amounted to tortious interference with his prospective business advantage. He claims to have suffered in particular from several instances of interference, including the removal of the compensating balances from the Dallas bank, the freezing of Lane's and La-Co, Inc.'s accounts, the refusal to honor cashier's checks issued by Lane, and the making of phone calls to other bankers in an attempt to discredit Lane and destroy his reputation. In addition, several loans issued while Lane was an officer were listed as substandard and called in by the bank.

Amidst all of these allegations there are basically three discernable legal questions before us. First of all, we must consider whether any of the defendants owed a duty to Harlan Lane as Chairman of the Board and Chief Executive Officer of the bank. Second, we must examine the nature of the tort of interference with prospective business advantage and determine whether or not the prima facie case was established at trial. Finally, we are presented with the question of whether or not a civil conspiracy existed.

In reviewing the decision of a district court to direct a verdict, we use the same standard applied by that court in deciding the issue—that is, we must determine whether or not the evidence was sufficient to create an issue of fact for the jury. 9 Wright & Miller, Federal Practice and Procedure: Civil § 2524 at 541; § 2536 at 595 (1971). In making such a determination, the evidence is viewed in the light most favorable to the nonmoving party, and that party is entitled to the benefit of all reasonable inferences from the evidence without resort to speculation. *Hauser v. Equifax,* 602 F.2d 811, 814 (8th Cir. 1979); *Kropp v. Ziebarth,* 601 F.2d 1348, 1352 (8th Cir. 1979). In reviewing a decision of a district court denying a motion for a new trial, we are mindful that such a motion "is addressed to the sound discretion of the trial court and its decision thereon should not be upset absent a strong showing of abuse." *Lincoln Carpet Mills, Inc. v. Singer, Inc.,* 549 F.2d 80, 81 (8th Cir. 1977). We have carefully reviewed the record, the pleadings and the briefs and conclude that Lane has failed to establish the existence of factual issues for the jury and has failed also in showing that the trial judge abused his discretion in denying the motion for a new trial.

## I. Duties

Lane's allegations of fraud, malpractice and breach of fiduciary duty must fail for the lack of any proof of duties owing to Lane. Turning first to the officers, directors and the employee of the bank, we note that the appellant does not question on this appeal the right and duty of the board of directors of a corporation to remove an officer whom they feel has committed criminal acts in the exercise of his or her authority. Nevertheless, it is claimed that the board's and officers' silence fraudulently induced Lane to enter into an illegal loan and constituted a breach of the fiduciary duty of the directors and officers. This argument is clearly untenable, for it is well settled that the fiduciary duty of a bank officer or director is owed to the depositors

and shareholders of the bank, and not to the Chairman of the Board or Chief Executive Officer. W. Fletcher, Cyclopedia of the Law of Private Corporations § 845 (rev. perm. ed. 1975). The duty of the directors in this proceeding clearly was to remove Lane and Couch from power. In fact, the failure to investigate and remove these men could have resulted in personal liability for the directors and officers. *Michelson v. Penney,* 135 F.2d 409, 417 (2d Cir. 1943); *Bank of Commerce v. Goolsby,* 129 Ark. 416, 196 S.W. 803, 808 (1917).

More specific allegations are leveled against the bank's attorneys, Frank Chowning and W. P. Hamilton. It is claimed that they took advantage of Mr. Lane by using information available to them through their representation of the bank and Mr. Lane, personally. Several cases are cited in the appellant's brief which set out the duties and obligations an attorney owes to a client under Arkansas law. We do not take issue with these cases. Instead, we conclude that the appellant has failed to establish that Messrs. Chowning and Hamilton owed any of these duties to Mr. Lane.

It is undisputed that Mr. Chowning represented the bank for forty years, and continued to do so during the period in which Lane was its Chairman and Chief Executive Officer. Like the bank directors and officers, however, he owed no fiduciary duty to Mr. Lane by virtue of this arrangement. This court has held that attorneys representing a corporation serve in the same fiduciary capacity as the directors. *Bryan v. Bartlett,* 435 F.2d 28, 37 (8th Cir. 1970), *cert. denied,* 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 658 (1971). Thus, if the bank directors and officers owe no fiduciary duty to Lane, it can hardly be said that the bank's attorneys do. Furthermore, Chowning and Hamilton's representation of the bank did not give rise to an ethical obligation to refrain from participating in Lane's removal. *See generally United States Industries v. Goldman,* 421 F.Supp. 7 (S.D.N.Y.1976).

The only way in which Lane could have substantiated his claims against the attorneys is to have offered proof that Chowning and Hamilton contemporaneously performed services for him, personally. *Id.* at 11. This he has failed to do. We agree with the district court that there is no evidence which establishes a client-attorney relationship between Lane and the attorneys. Those relations which had once existed unquestionably were terminated prior to the time period here in question. We therefore find no legal or factual basis to support Lane's allegations against the attorneys.

## II. Interference with Prospective Business Advantages

It is well established under Arkansas law that "malicious and wilful interference with contractual rights and relationships of another has been recognized as an actionable tort." *Mason v. Funderburk,* 247 Ark. 521, 446 S.W.2d 543, 546 (1969). The *Funderburk* decision cites with approval the elements of this tort as laid out in *Calbom v. Knudtzon,* 65 Wash.2d 157, 396 P.2d 148 (1964):

> The basic elements going into a prima facie establishment of the tort are (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Id.* 396 P.2d at 151. Under these or any other standards, however, we find no evidence that this tort has been committed.

To begin with, we do not feel that Harlan Lane's relationship with the bank was contractual. He was an officer and board chairman of the bank and, as such, was subject to dismissal by the board of directors, under the authority of the nation-

al banking laws.[3] Second, we have already determined that the defendants in this case were carrying out the duties they owed to the bank by removing Lane from power. We therefore cannot conclude that, in doing so, they intentionally interfered with Lane's contractual relations or his business expectancies. And although we are aware that Mr. Lane suffered financial setbacks following the actions of the defendants, we are convinced that the tort of interference with prospective business advantage was never intended to provide recovery in circumstances such as these, where the defendants were obligated to act to the detriment of Mr. Lane.

### III. Conspiracy

The final allegation is that the defendants participated in a civil conspiracy to commit all of the other allegations, including interfering with Mr. Lane's business expectations and relations. The *Funderburk* decision dealt with a civil conspiracy to interfere with a contract of employment, and set out the following standards for establishing such a claim:

> Even though one may not be liable as a direct actor in interfering with existing contracts of employment, he may incur liability as a participant in a conspiracy which *results in one or more overt acts* by others constituting actionable interference. A civil conspiracy is a combination of two or more persons to accomplish a purpose that is unlawful or oppressive or to accomplish some purpose, not in itself unlawful, oppressive, or immoral, by unlawful, oppressive or immoral means, to the injury of another.

*Mason v. Funderburk, supra,* 446 S.W.2d at 548 (emphasis supplied). We have already determined that Lane has failed to establish either a factual or a legal basis for recovery on any of his several allegations. It fol-

lows, then, that no overt act has been established which is a necessary element in establishing the existence of a civil conspiracy.

We also agree with the district court that there is no proof of either an "unlawful or oppressive" purpose or a lawful purpose pursued by unlawful or oppressive means. Banking corporations have a statutory privilege to remove officers and directors of a bank at pleasure.[4] And, under the law of Arkansas, the directors had an obligation to exercise reasonable control over the affairs of the bank. *Bank of Commerce v. Goolsby, supra,* 196 S.W. at 808. Furthermore, none of the actions taken by the defendants either before or after Lane's removal were improper.

We conclude that Lane has not established that an issue of fact exists for jury determination. Furthermore, we cannot find any evidence that the trial court judge abused his discretion in refusing to grant Lane's motion for a new trial. Therefore we affirm the decision of the district court.

---

3. 12 U.S.C. § 24 reads, in part, as follows:
   Upon duly making and filing articles of association and an organization certificate a national banking association shall become, as from the date of the execution of its organization certificate, a body corporate, and as such, and in the name designated in the organization certificate, it shall have power—

   \*    \*    \*    \*    \*    \*

Fifth. To elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, dismiss such officers or any of them at pleasure, and appoint others to fill their places.

4. *See* note 3, *supra.*