**QUINTEL CORPORATION, N.V., Plaintiff,**

v.

**CITIBANK, N.A., Defendant.**

**CITIBANK, N.A., Third-Party Plaintiff,**

v.

**H.R. GAJRIA, Arnold Alperstein, and Goldstick, Weinberg, Feldman, Alperstein & Taishoff, P.C., Third-Party Defendants.**

**QUINTEL CORPORATION, N.V. and H.R. Gajria, Plaintiffs,**

v.

**Arnold S. ALPERSTEIN, et al., Defendants.**

**Nos. 80 Civ. 4936 (RWS), 82 Civ. 4856 (RWS).**

United States District Court, S.D. New York.

June 4, 1984.

Carro, Spanbock, Fass, Geller, Kaster & Cuiffo, New York City, for plaintiff and third-party defendant; Charles D. Bock, Gilbert C. Ferrer, Gail I. Edwin, Vincent Lipari, New York City, of counsel.

Shearman & Sterling, New York City, for defendant and third-party plaintiff; Mark P. Zimmett, New York City, of counsel.

Wilson, Elser, Edelman & Dicker, New York City, for defendants and third-party defendants; Edward J. Boyle, Steven Kent, New York City, of counsel.

D'Amato & Lynch, New York City, for third-party defendant; Richard G. McGahren, Steven M. Jampol, New York City, of counsel.

## OPINION

SWEET, District Judge.

Third-party defendant Conboy, Hewitt, O'Brien & Boardman ("Conboy") has moved to dismiss the third-party complaint of defendants and third-party plaintiffs Arnold S. Alperstein and Goldstick, Weinberger, Feldman, Alperstein & Tashoff, P.C. (collectively "Alperstein"), pursuant to Fed.R.Civ.P. 8, 9(b) and 12(b)(6), on the grounds that the third-party complaint fails to plead fraud with particularity and fails to state a claim upon which relief may be granted. For the following reasons, Conboy's motion to dismiss the complaint will be granted.

### Prior Proceedings

In 1980, plaintiff Quintel Corp., N.V. ("Quintel") commenced an action against Citibank and others for their alleged violations of federal securities laws in connection with Quintel's investment in Flag Associates, L.P. ("Flag"), a real estate limited partnership. The complaint alleges that the general partners of Flag and Citibank made certain misrepresentations to Quintel upon which it relied in investing in Flag. Quintel alleges, among other things, that certain of the defendants failed to disclose their ownership of approximately 80 acres of undeveloped land adjacent to the property being acquired by Flag, that Quintel's funds were used to purchase the undeveloped land but that the defendants would retain ownership and control of the 80 acres. Subsequently, the general partners of Flag entered into a settlement agreement with Quintel.

After serving an answer to the complaint, Citibank served and filed a third-party complaint against H.R. Gajria ("Gajria"), the sole beneficial owner of Quintel. The third-party complaint states two claims for relief. The first claim alleges, that Gajria and Citibank entered into an "ISD Real Estate Investment Advisory Service Acquisition Agreement ("ISD Agreement") with Citibank, whereby Gajria appointed Citibank his agent and attorney in-fact for certain purposes. It is further alleged that, pursuant to the ISD agreement, Gajria agreed to indemnify Citibank from any actions, claims or demands arising from any real estate investment made by Citibank on Gajria's behalf. Citibank seeks complete indemnification from Gajria upon any claims made by Quintel. The second claim for relief seeks monies owed to Citibank for an alleged overdraft by Gajria.

Citibank also served and filed a third-party complaint against Alperstein seeking contribution with respect to the state claims asserted by Quintel. Alperstein's motion to dismiss the third-party complaint was denied in an opinion dated October 18, 1983.

In 1982, Quintel and Gajria commenced a separate action against Arnold S. Alperstein, and Goldstick, Weinberger, Feldman, Alperstein & Tashoff, P.C., attorneys who

represented them in connection with their investment in Flag. Quintel and Gajria allege that the Alperstein defendants were negligent in their representation. In October, 1983, this court consolidated the two actions for trial. In December, 1983, the Alperstein defendants moved for leave to implead the general partners and their counsel, Conboy. By order and opinion dated December 23, 1983, this court granted in part the Alperstein defendants' motion to implead Conboy. The court denied the motion to the extent that it sought to implead the settling defendant general partners.

In January, 1984, the Alperstein defendants served their third-party complaint upon Conboy seeking indemnification and contribution for any damages that the Alperstein defendants may ultimately be adjudged liable to pay Quintel and Gajria. On March 16, 1984, Conboy's motion to dismiss was heard.

**The Alperstein Third-Party Action**

The third-party complaint filed by Alperstein against Conboy states that this court has jurisdiction pursuant to section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, 28 U.S.C. § 1331, and principles of pendent and ancillary jurisdiction. The complaint realleges the allegations of the two prior actions and alleges:

19. Upon information and belief, an agreement was reached between Citibank, Alperstein and Conboy, which resulted in the allocation of the legal work that had to be completed on behalf of the Limited Partnership, Quintel and Gajria. Pursuant to that agreement Alperstein and Goldstick relied upon Conboy and Citibank to protect the limited partner's interest in the Flag transaction.

20. As title counsel, Conboy was or should have been aware of the additional 80 acres and the fact that Quintel was excluded from ownership of those acres.

21. Conboy understood or should have understood that it was responsible for insuring that the additional 80 acres would also inure to the benefit of Quintel, the limited partner of Flag. At the very least, Conboy should have made full disclosure to Quintel and/or Alperstein and Goldstick of the existence of the 80 acres of undeveloped land and the General Partners' intentions to exclude that land from the Limited Partnership.

22. Upon information and belief, Conboy also knew that a significant portion of the contribution of Quintel to the Limited Partnership was being used to purchase the additional 80 acres.

23. Upon information and belief, Conboy charged for these "legal services."

24. By reason of the agreement between Citibank, Conboy and Alperstein wherein Conboy agreed to represent Quintel and the General Partners in Flag's purchase of the Florida property, Conboy owed a fiduciary obligation to both Quintel, as the limited partner, and Alperstein, as Quintel's attorney, to act in the best interest of Quintel.

25. By virtue of the aforesaid acts, Conboy and the General Partners willfully disregarded their fiduciary obligations to Quintel and Alperstein by acting contrary to the best interests of Quintel in that they have, without the prior knowledge or consent of Quintel or Alperstein:

(a) entered into self-dealing, contractual arrangements which were manifestly not in the best interest of Quintel or Alperstein;

(b) conveyed the undeveloped land which should rightfully be the property of Flag from Garrin Properties to Queens Park Land Developers, another partnership composed of the General Partners;

(c) dissipated the assets of Flag by utilizing the capital of Flag contributed by Quintel to acquire the undeveloped land without providing any corresponding benefit to Quintel or Flag; and

(d) taken for themselves undisclosed compensation in the form of the undeveloped land.

Alperstein alleges two causes of action against Conboy for indemnification and contribution. He bases these claims primarily on: (1) a breach of fiduciary duty

owed Quintel, Gajria or Alperstein arising out of an agreement to allocate legal work, and (2) aiding and abetting the alleged securities fraud of the Flag general partners. In addition to its allegation that Conboy aided and abetted the general partners' primary fraud, Alperstein appears to assert claims for securities and common law fraud directly against Conboy.

**Breach of Fiduciary Duty**

With respect to the claim for breach of fiduciary duty, paragraph 19 of the third party complaint alleges that "an agreement was reached between Citibank, Alperstein and Conboy, which resulted in the allocation of the legal work that had to be completed on behalf of the Limited Partnership, Quintel and Gajria." Paragraph 24 then alleges that by reason of the agreement among Citibank, Conboy and Alperstein "wherein Conboy agreed to represent Quintel and the General Partners in Flag's purchase of the Florida property, Conboy owes a fiduciary obligation to both Quintel, as the limited partner, and Alperstein, as Quintel's attorney, to act in the best interest of Quintel."

The third-party complaint sets forth no facts or material terms to support the existence of an agreement to allocate legal services other than the fact that Conboy charged Quintel for its services. More importantly, the third-party complaint does not allege that Quintel or Gajria agreed to be represented by Conboy. "[A] lawyer cannot delegate his fiduciary duties to another in an effort to avoid its [sic] strictures or to avoid responsibility for the manner in which they are undertaken." *Fund of Funds, Ltd. v. Arthur Andersen & Co.,* 567 F.2d 225, 234 (2d Cir.1977). *See also In re Yarn Processing Patent Validity Litigation,* 530 F.2d 83, 90 (5th Cir.1976); *Developmental Disabilities Advocacy Assoc., Inc. v. Melton,* 521 F.Supp. 365 (1981); *People v. Betillo,* 53 Misc.2d 540, 279 N.Y. S.2d 444, 452 (Sup.Ct.1967) *("It is a rule of first importance governing the conduct of a lawyer that his relationship to his client should be personal; that his responsibility should be direct. Without*

*specific authority from his principal, an agent has no power to delegate his trust. The relationship of principal and agent does not exist between the principal and a subagent.")* (citations omitted) (emphasis in original). The third-party complaint does not allege that Quintel, Alperstein's client, was a party to the agreement or consented to it.

Alperstein argues that the third-party complaint does not allege a delegation of duty by Alperstein to Conboy but rather that Conboy agreed to act as title counsel for the general partners, Flag and Quintel. In essence, Alperstein's claim appears to be that Conboy, as title counsel to the limited partnership, had a fiduciary obligation to Quintel as a limited partner, even though Quintel had separate counsel. The third-party complaint may also be construed as creating an agreement between Alperstein and Conboy. However, no consideration running from Alperstein is alleged to support such an agreement, and Alperstein has not alleged a breach of contract claim.

In support of its argument that Conboy acted as title counsel for the limited partnership, Alperstein notes that Flag paid Conboy for legal services. However, the fact that Flag paid Conboy's fee does not mean that Flag retained Conboy. The payment of legal fees does not determine whether an attorney client relationship exists. *See, e.g., In re Grand Jury Proceedings in Matter of Freeman,* 708 F.2d 1571 (11th Cir.1983); *United States v. Costanzo,* 625 F.2d 465 (3d Cir.1980); *International Paper Co. v. Lloyd Manufacturing Co., Inc.,* 555 F.Supp. 125 (N.D.Ill.1982); *Young v. Oak Crest Park, Inc.,* 75 A.D.2d 956, 428 N.Y.S.2d 69 (1980); *People v. Arroyave,* 63 A.D.2d 127, 407 N.Y.S.2d 15 (1978), *modified,* 49 N.Y.2d 264, 425 N.Y.S.2d 282, 401 N.E.2d 393 (1980); *People v. Fentress,* 103 Misc.2d 179, 425 N.Y.S.2d 485 (N.Y.Co. 1980). In *International Electronics Corp. v. Flanzer,* 527 F.2d 1288 (2d Cir.1975), the Court of Appeals reversed the district court's disqualification of a law firm despite the law firm's counterclaim for fees. The Court stated: "Nor by the counter-

claim for fees does the law firm adopt the status of counsel to the plaintiffs. The claim of the law firm is not that they earned fees by representing the plaintiffs, but that the plaintiffs had allegedly agreed to payment of their fees for work in the merger as a part of the purchase price." *Id.* at 1292.

Even if Conboy represented the limited partnership, its duty would run to the partnership, not to Quintel or his counsel. The New York Code of Professional Responsibility. Ethical Consideration 5–18 provides:

A lawyer employed or retained by a corporation *or similar entity* owes his allegiance to the entity and not to a stockholder, director, officer, employee, representative, *or other person connected with the entity.*

N.Y.Jud. Law, Code Prof. Resp. EC 5–18 (emphasis added). In an analogous situation, a corporate director or officer may not sue the corporation's legal counsel for malpractice. *See, e.g., Lane v. Chowning,* 610 F.2d 1385 (8th Cir.1979); *Stratton Group, Ltd. v. Sprayregen,* 466 F.Supp. 1180 (S.D. N.Y.1979); *cf. U.S. Industries, Inc. v. Goldman,* 421 F.Supp. 7 (S.D.N.Y.1976). In *Sprayregen,* a corporation sued three of its directors and officers for federal securities laws violations, common law fraud and breach of fiduciary duty. The defendants then filed a third-party complaint against the corporate plaintiff's legal counsel. The court dismissed the third-party claims for indemnity and contribution against the law firm, stating:

The fact that an attorney represents a corporation does not thereby make that attorney counsel to the individual officers and directors thereof. Since the Sprayregens bring this third-party action in their individual capacities there is simply no basis upon which to establish an attorney client relationship.

*Sprayregen, supra,* at 1184 n. 3. Similarly, in this case, there is no basis upon which to establish an attorney-client relationship between Conboy and Quintel or Gajria.

■ Under New York law, an attorney generally cannot be held liable to third parties for actions taken in furtherance of his role as counsel "unless it is shown that he 'did something either tortious in character or beyond the scope of his honorable employment.'" *Newburger, Loeb & Co. v. Gross,* 563 F.2d 1057, 1080 (2d Cir.) (quoting *Dallas v. Fassnacht,* 42 N.Y.S.2d 415, 418 (Sup.Ct.1943)), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1977). An attorney may be held liable to a third party for wrongful acts if he has committed fraud or collusion or a malicious or tortious act. *E.g., Kahn v. Crames,* 92 A.D.2d 634, 459 N.Y.S.2d 941, 943 (1983); *Singer v. Whitman & Ransom,* 83 A.D.2d 862, 442 N.Y.S.2d 26, 27 (1981); *Cronin v. Scott,* 78 A.D.2d 745, 432 N.Y.S.2d 656, 658 (1980); *Gifford v. Harley,* 62 A.D.2d 5, 404 N.Y.S.2d 405, 406 (1978). Although the third-party complaint makes conclusory allegations of fraud, it fails, as discussed below, to plead fraud with particularity. Alperstein has not alleged any tortious acts by Conboy or acts exceeding the scope of its alleged employment.

Alperstein argues, however, citing *White v. Guarente,* 43 N.Y.2d 356, 401 N.Y.S.2d 474, 372 N.E.2d 315 (1977), that Conboy, as counsel to the limited partnership, owed a duty to Quintel because it was reasonably foreseeable that Quintel would rely upon representations made by Conboy and would expect Conboy to protect his interest. In *White,* a group of limited partners sued the general partners and the accounting firm retained by the partnership. The plaintiffs alleged malpractice by the accounting firm primarily due to its failure to comment on the withdrawal by the general partners of a major portion of their capital investment. Despite the lack of privity between the plaintiffs and the accountants, the court permitted the suit, concluding that:

the accountant must have been aware that a limited partner would necessarily rely on or make use of the audit and tax returns of the partnership, or at least constituents of them, in order to properly prepare his or her own tax returns. This was within the contemplation of the parties to the accounting retainer. In such

circumstances, assumption of the task of auditing and preparing the returns was the assumption of a duty to audit and prepare carefully for the benefit of those in a fixed, definable and contemplated group whose conduct was to be governed, since, given the contract and the relation, the duty is imposed by law and it is not necessary to state the duty in terms of contract or privity.

*Id.* at 361–62, 401 N.Y.S.2d at 478, 372 N.E.2d at 319 (citations omitted). The court distinguished *Ultramares Corp. v. Touche,* 255 N.Y. 170, 174 N.E. 441 (1931), the leading case on accountant's liability for negligence, explaining:

While *Ultramares* made it clear that accountants were not to be liable in negligence on the generalized basis that a contract for professional services creates liability in favor of the general populace, this plaintiff seeks redress, not as a mere member of the public, but as one of a settled and particularized class among the members of which the report would be circulated for the specific purpose of fulfilling the limited partnership agreed upon arrangement.

*Id.* 401 N.Y.S.2d at 479, 372 N.E.2d at 320.

Despite the broad language in *White,* its holding has been narrowly construed. *See Aeronca, Inc. v. Gorin,* 561 F.Supp. 370, 378 (S.D.N.Y.1983); *Calamari v. Grace,* 98 A.D.2d 74, 469 N.Y.S.2d 942, 947 (1983). In *Aeronca,* the Honorable Gerard L. Goettel declined to extend *White* to permit a creditor-subcontractor of a public corporation to assert a claim for negligence against the corporation's accountants. Judge Goettel noted that the accountants' duty in *White* arose because of the nature of their agreement with the limited partnership and the circumstances surrounding the agreement which made clear that the accountants' performance was for the benefit of the limited partners. *Id.* at 378. Similarly, in *Calamari v. Grace,* the Appellate Division reviewed the privity requirement in professional malpractice actions, distinguished *White,* and affirmed the dismissal of a third-party complaint by the seller of property against the title company retained by the buyer. The court concluded, "notwithstanding the widespread denigration of the privity rule by some jurisdictions and its alleged irrelevance in establishing the scope of tort liability, there are no indications of an outright departure in this State from the concept of privity." *Calamari v. Grace,* 469 N.Y.S.2d at 947.

In attorney malpractice actions, privity appears to remain the rule in New York. *See e.g., Calamari v. Grace, supra,* 469 N.Y.S.2d at 945; *Pomona Enterprises v. Bleakley, Platt, Schmidt & Fritz,* 95 A.D.2d 988, 465 N.Y.S.2d 100 (1983) (affirming dismissal of complaint commenced by nonclient third party against defendant law firm); *Kahn v. Crames, supra,* 459 N.Y.S.2d at 943; *Harder v. Arthur F. McGinn, Jr., P.C.,* 89 A.D.2d 732, 454 N.Y. S.2d 42, *aff'd,* 58 N.Y.2d 663, 458 N.Y.S.2d 542, 444 N.E.2d 1006 (1982); *Gifford v. Harley, supra,* 404 N.Y.S.2d at 406. A very narrow exception was made to the general rule in *Baer v. Broder,* 86 A.D.2d 881, 447 N.Y.S.2d 538 (1982), where a widow who had retained an attorney in her capacity as executrix of her husband's estate to handle a wrongful death action was permitted to maintain a malpractice action against the attorney in her individual capacity. The Special Term stated that "the citadel of privity is not invulnerable to the assault made upon it in this case," 106 Misc.2d 929, 436 N.Y.S.2d 693, 697 (Sup.Ct. 1981), but the Appellate Division affirmed on the ground that "the relationship of the plaintiff to the underlying wrongful death action is unique and demands an exception to the general rule regarding privity." 447 N.Y.S.2d at 539. *See also Schwartz v. Greenfield, Stein v. Weisinger,* 90 Misc.2d 882, 396 N.Y.S.2d 582 (Sup.Ct.1977) (borrower's attorney who volunteered the file security document for lender but failed to do so was liable to lender despite lack of privity).

■ To hold that a limited partner is automatically a foreseeable client of the attorney representing the general partners or even the limited partnership, in the ab-

sence of any affirmative assumption of duty by the attorney, would ignore Ethical Consideration 5–18 which specifically defines the attorney's allegiance to the entity that retained him rather than to any person connected with the entity. No facts have been alleged here to suggest that it was reasonably foreseeable that Quintel, who was represented by separate counsel, would rely on Conboy to act as its lawyer. *Cf. Croce v. Kurnit*, 565 F.Supp. 884, 890 (S.D.N.Y.1982) (defendant's conduct caused plaintiff to believe he was acting as her lawyer). The third-party complaint is devoid of any allegation that Quintel believed Conboy rather than Alperstein to be its lawyer; it alleges only that Conboy, Citibank and Alperstein agreed to allocate legal services but not that Quintel agreed to a delegation of duties by Alperstein. On the facts alleged, there is no attorney-client relationship upon which Quintel, in its own capacity, much less Alperstein, could sue Conboy for malpractice. It has not chosen to seek to bring a derivative action on behalf of the limited partnership against Conboy for malpractice. *See* N.Y.Part.Law § 115–a (McKinney 1983–84 Supp.).

■ A complaint should be dismissed for failure to state a claim only when it can be demonstrated beyond doubt that the plaintiff can prove no set of facts in support of his claim entitling him to relief. *Cruz v. Beto*, 405 U.S. 319, 322, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). In the absence of an attorney-client relationship between Quintel and Conboy, Alperstein cannot establish a breach of duty owed by Conboy to Quintel or Alperstein. Accordingly, Conboy's motion to dismiss the third-party complaint insofar as it alleges a breach of fiduciary duty is granted.

**Fraud and Negligent Misrepresentation**

■ The third party complaint also alleges that Conboy and the Flag general partners acted to defraud Quintel, Gajria and Alperstein. The allegations of fraud are made upon information and belief. Such allegations are generally insufficient for purposes of Fed.R.Civ.P. 9(b).

■ Rule 9(b) requires that "In all averments of fraud … the circumstances constituting fraud … shall be stated with particularity." Fed.R.Civ.P. 9(b). There are at least three purposes underlying the requirement of particularity:

First, it assures the defendant of "fair notice of what the plaintiff's claim is and the ground upon which it rests." Secondly, the specificity requirement grows out of the desire to protect defendants from the harm that comes to their goodwill when they were charged with serious wrongdoing … In the context of securities litigation Rule 9(b) serves an additional important purpose. It operates to diminish the possibility that "a plaintiff with a largely groundless claim [will be able] to simply take up the time of a number of other people [by extensive discovery], with the right to do so representing an *in terrorem* increment of the settlement value, rather than a reasonably founded hope that the process will reveal relevant evidence …"

*Ross v. A.H. Robins Co.*, 607 F.2d 545, 557 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980) (citations omitted); *Morgan v. Prudential Group, Inc.*, 81 F.R.D. 418, 423 (S.D.N.Y. 1978).

In *Segal v. Gordon*, 467 F.2d 602 (2d Cir.1972), the Second Circuit articulated the Rule 9(b) standard for complaints alleged "upon information and belief:"

[T]he general rule is that rule 9(b) pleadings cannot be based "on information and belief." While the rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded.

*Id.* at 608.

The third party complaint contains no specific allegations that Conboy made any misrepresentations or omissions. The third party complaint alleges that:

27. Upon information and belief, commencing on or about July, 1979, the Gen-

eral Partners, and their counsel, Conboy, embarked upon a course of conduct designed to mislead and deceive Quintel and induce it to purchase a limited partnership interest in Flag. As part of this cours of conduct, for the purpose of inducing Quintel to purchase the limited partnership interest, the General Partners made, or caused to be made, representations of material facts to Quintel, which were materially misleading when made, and which were made with the intention that Quintel would rely upon them. Further, the General Partners omitted to state material facts to Quintel or its attorneys, Alperstein and Goldstick, which they knew would affect Quintel's investment plans.

Third-Party Compl. ¶ 27. Alperstein then proceeds to delineate the statements and representations made by the general partners, but, as to Conboy, Alperstein alleges only that Conboy remained silent in order to aid, abet and assist the general partners in their scheme to defraud Quintel.

The Second Circuit has vigorously enforced Rule 9(b) where securities law "fraud" is alleged against professionals such as attorneys. *Denny v. Barber*, 576 F.2d 465 (2d Cir.1978); *Segal v. Gordon*, *supra*, 467 F.2d at 607; *Shemtob v. Shearson, Hammill & Co.*, 448 F.2d 442, 444 (2d Cir.1971); *O'Neill v. Maytag*, 339 F.2d 764, 768 (2d Cir.1964); *Rich v. Touche Ross & Co.*, 68 F.R.D. 243, 246–47 (S.D.N.Y.1975). *See also Decker v. Massey-Ferguson Ltd.*, No. 79–2654, slip op. at 6 (S.D.N.Y. Dec. 21, 1979) ("Courts frequently have recognized that an important function of Rule 9(b) is to protect individuals and professionals such as attorneys and accountants from baseless accusations of fraud, which have damaging potential to injure personal and professional reputation. Therefore, the rule requires that charges of fraud against such persons set forth with particularity the role of each defendant in the unlawful acts alleged.") (citations omitted).

To satisfy Rule 9(b), plaintiffs must particularize and describe in detail each de-

fendant's involvement in the alleged fraud. In this regard, Alperstein must specify:

a) the fraudulent statements which were made and the documents containing those statements;

b) the time and place of each such fraudulent statement and the person who made (or in the case of an omission did not make) the statement; and

c) the content of the fraudulent statement, how it was misleading, and the manner in which it was relied upon by the plaintiff.

*See Ross v. A.H. Robins Co.*, *supra*, 607 F.2d at 557–558; *Dickens v. Chemical Bank*, 573 F.Supp. 1129, 1133 (S.D.N.Y. 1983); *Barclays Bank of New York v. Goldman*, 517 F.Supp. 403, 415 (S.D.N.Y. 1981); *Posner v. Coopers & Lybrand*, 92 F.R.D. 765, 769 (S.D.N.Y.1981), *affirmed*, 697 F.2d 296 (2d Cir.1982); *Fidenas AG v. Honeywell Inc.*, 501 F.Supp. 1029, 1039 (S.D.N.Y.1980); *Todd v. Oppenheimer & Co., Inc.*, 78 F.R.D. 415, 420–21 (S.D.N.Y. 1978); *Gross v. Diversified Mortgage Investors*, 431 F.Supp. 1080, 1087–88 (S.D.N.Y.1977), *affirmed*, 636 F.2d 1201, 1203, 1206 (2d Cir.1980).

The third-party complaint contains conclusory allegations and provides no factual basis for the claim of fraud asserted against Conboy. Therefore, to the extent the third-party complaint asserts a claim of primary fraud, it fails to state a claim for relief.

To the extent the third party complaint attempts to assert a claim for negligent misrepresentation, the complaint also fails to state a claim for relief. The New York Court of Appeals has stated the basic elements of a cause of action for negligent misrepresentation as follows:

As to duty imposed, generally a negligent statement may be the basis for recovery of damages, where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage ..., but such information is not actionable unless expressed directly, with knowledge or notice that it will be acted

upon, to one whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all ...."

*White v. Guarente, supra,* 43 N.Y.2d at 362–63, 401 N.Y.S.2d at 478, 372 N.E.2d at 319 (citations omitted); *see also Mallis v. Bankers Trust Co.,* 615 F.2d 68, 82 (2d Cir.1980), *cert. denied,* 449 U.S. 1123, 101 S.Ct. 938, 67 L.Ed.2d 109 (1981). The third-party complaint fails to allege any misrepresentations made by Conboy. Nondisclosure unaccompanied by some act or conduct which deceives the plaintiff is not a misrepresentation. *See Moser v. Spizzirro,* 31 A.D.2d 537, 295 N.Y.S.2d 188, 189, *aff'd,* 25 N.Y.2d 941, 305 N.Y.S.2d 153, 252 N.E.2d 632 (1969); *see also Simcuski v. Saeli,* 44 N.Y.2d 442, 406 N.Y.S.2d 259, 265, 377 N.E.2d 713, 719 (1978). Moreover, as discussed above, the third-party complaint fails to establish the requisite duty between Conboy and Quintel.

### Aiding and Abetting Liability

■ Paragraph 29 of the third-party complaint alleges, upon information and belief, that Conboy was aware of the 80 acres being acquired by the general partners and of the misleading information given to Quintel, but Conboy "remained silent in order to aid, abet and assist the General Partners in their scheme to defraud Quintel and further their own economic prospects." Third-Party Compl. ¶ 29.

There are three requirements for aiding and abetting liability. Plaintiffs must prove (1) a securities law violation by a primary wrongdoer, (2) knowledge of the violation by the person sought to be charged, and (3) proof that the person sought to be charged substantially assisted in the primary wrongdoing. *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir.1983); *IIT, An International Investment Trust v. Cornfeld,* 619 F.2d 909, 922 (2d Cir.1980); *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47–48 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978).

Paragraph 27 of the third-party complaint alleges a number of material misrepresentations and omissions by the general partners, therefore, Alperstein has adequately alleged a securities violation by a primary wrongdoer. The remaining issues are whether Conboy had knowledge of the violation or violations by the general partners and whether it substantially assisted the general partners' wrongdoing.

■ In the Second Circuit, reckless disregard of the facts is sufficient to satisfy the requirement of knowledge if the alleged aider and abettor owes a fiduciary duty to the plaintiff. *Armstrong v. McAlpin, supra,* at 91; *IIT, An International Investment Trust v. Cornfeld, supra,* at 923. In addition, several courts in this district have found recklessness sufficient if reliance by the plaintiff was reasonably foreseeable. *See Morgan v. Prudential Group, Inc.,* 527 F.Supp. 957, 961 (S.D.N.Y.1981) (attorney's tax opinion); *Oleck v. Fischer,* [1979 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 96,898, at 95, 699 (S.D.N.Y. June 8, 1979), *aff'd,* 623 F.2d 791 (2d Cir. 1980) (auditor's certification of financial statements); *Competitive Assocs., Inc. v. Laventhol Krekstein Horwath & Horwath,* 478 F.Supp. 1328, 1341 (S.D.N.Y. 1979) (auditors' certification of financial statements). The Second Circuit, however, has reserved decision on this point. *See Oleck v. Fischer, supra,* 623 F.2d at 795. "If there is no fiduciary duty, the 'scienter' requirement scales upward—the assistance rendered should be both substantial and knowing." *Edwards & Hanly v. Wells Fargo Securities Clearance Corp.,* 602 F.2d 478, 484 (2d Cir.1979), *cert. denied,* 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980); *see Armstrong v. McAlpin, supra,* at 91; *IIT, an International Investment Trust v. Cornfeld, supra,* at 923. In *IIT,* the court quoted with approval the following statement in *Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 97 (5th Cir.1975):

When it is impossible to find any duty of disclosure, an alleged aider-abettor should be found liable only if scienter of the high "conscious intent" variety can be proved. Where some special duty of

disclosure exists, then liability should be possible with a lesser degree of scienter. *Id.* at 925. Since Conboy owed no fiduciary duty to Quintel or Alperstein, "scienter of the high 'conscious intent' variety," or, as the Second Circuit stated in *Edwards & Hanly, supra,* at 485, "something closer to an actual intent to aid in the fraud," is necessary.

The third-party complaint alleges, on information and belief, that "Conboy was aware of the additional 80 acres going only to the General Partners and the misleading information given to Quintel, but remained silent in order to aid, abet and assist the General Partners in their scheme to defraud Quintel ... ." Third-Party Compl. ¶ 29. It sets forth no facts upon which to conclude that Conboy was aware of the misrepresentations allegedly made to Quintel or that Conboy intended to aid the general partners' fraudulent scheme by remaining silent. In the absence of any alleged facts in support of the allegation that Conboy remained silent "in order to" aid the general partners' alleged fraud, the third-party complaint fails to allege a sufficiently high degree of scienter. *See Ross v. A.H. Robins Co., supra,* 607 F.2d at 558; *Dickens v. Chemical Bank, supra,* 573 F.Supp. at 1132–33.

Moreover, the third-party complaint does not adequately allege substantial assistance by Conboy with respect to the general partners' alleged fraud. In the absence of an independent duty to act, the general rule is that inaction does not constitute substantial assistance and cannot create aider and abettor liability except when it was designed intentionally to aid the primary fraud. *Armstrong v. McAlpin, supra,* at 91; *IIT, supra,* at 927; *Edwards & Hanly, supra,* at 485. Accordingly, in the absence of a duty to act, aiding and abetting liability is appropriate only if "there is clear evidence of the required degree of scienter and a conscious and specific motivation for not acting on the part of an entity with a direct involvement in the transaction." *IIT, supra,* at 927.

Alperstein has alleged that Conboy failed to disclose material information to Quintel and Alperstein "in order to" assist the general partners' scheme to defraud Quintel. Although the third-party complaint's use of the phrase "in order to" may imply conscious intent, there is no intimation in the third-party complaint that Conboy had a direct involvement in the transaction, or deliberately covered up an improper conveyance of the undeveloped land. An attorney is not generally responsible for the motives of his clients. *Newburger, Loeb & Co. v. Gross, supra,* at 1080. Finally, the specificity of these allegations must be considered against a background of extensive discovery conducted since the initiation of the action. Accordingly, Conboy's motion to dismiss the third-party complaint insofar as it alleges that Conboy aided and abetted the alleged violations of the federal securities laws by the general partners is granted.

**Conclusion**

For the foregoing reasons, Conboy's motion to dismiss the third-party complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6) is granted. The parties are directed to submit a proposed joint pretrial order on June 20, 1984 and to attend a final pretrial conference at 4:30 p.m. that day. The case will be placed on the ready trial calendar at that time.

**IT IS SO ORDERED.**