**FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver of AmTrust Bank, Plaintiff,**

v.

**US MORTGAGE CORPORATION d/b/a Mortgage Concepts, Defendant.**

**US Mortgage Corporation d/b/a Mortgage Concepts, Cross–Complainant,**

v.

**Lawrence Conde, Marian T. Campi a/k/a Marian Conde, Michael J. Conde, Edward A. Christensen, and Ira S. Ezratty, Cross–Defendants.**

No. 13–cv–00517(ADS)(AKT).

United States District Court, E.D. New York.

Signed Sept. 15, 2015.

Ellenoff Grossman & Schole LLP by: Eric S. Weinstein, Esq., Of Counsel, New York, NY, Attorneys for the Plaintiff.

Johnston § Thomas, Attorneys at Law by: Ryan F. Thomas, Esq., Of Counsel, Santa Rosa, CA, Attorneys for the Defendant/Third–Party Plaintiff U.S. Mortgage Corporation d/b/a U.S. Mortgage Concepts.

John P. DeMaio, Esq., New York, NY, Attorney for the Third–Party Defendants Lawrence Conde and Michael J. Conde.

Marian T. Campi a/k/a Marian Conde, Port Jefferson, NY, Third–Party Defendant.

Kaufman Dolowich & Voluck LLP by: Brett A. Scher, Esq., Of Counsel, Woodbury, NY, Attorneys for the Third–Party Defendant Ira S. Ezratty.

Edward A. Christensen, Third–Party Defendant, No Appearance.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge:

Presently before the Court is a motion by the Cross–Defendant Ira S. Ezratty to dismiss the claims that are asserted against him contained in the second amended third-party complaint of the Defendant/Cross–Complainant U.S. Mortgage Corporation a/k/a U.S. Mortgage Concepts. This case comes before the Court by way of a protracted procedural history. A brief recitation of that history is now provided.

On January 29, 2013, the Plaintiff Federal Deposit Insurance Corporation ("FDIC"), in its capacity as the Receiver of AmTrust Bank of Cleveland, Ohio ("AmTrust"), commenced this action against U.S. Mortgage Corporation d/b/a U.S. Mortgage Concepts ("USMC"). The complaint in that action (the "Main Complaint") principally alleged that USMC, a mortgage broker, breached the terms of a Master Broker Agreement. The case was originally assigned to the Honorable Joseph F. Bianco.

The basis for the alleged breach originates not with USMC, but with the individual Cross–Defendants, namely, Lawrence Conde ("Lawrence"), Michael J. Conde ("Michael"), and Marian T. Campi a/k/a Marian Conde ("Marian", together with Lawrence and Michael, the "Condes"). It is alleged that these individuals engaged in a fraudulent scheme to obtain a home mortgage loan. In particular, the Condes allegedly provided false and misleading information to USMC in order to qualify for loan financing. USMC then allegedly supplied that same false information to AmTrust. Allegedly, Am-

Trust relied on this information and approved a $1.5 Million loan for the Condes, to its detriment.

It is alleged in the Main Complaint that USMC's act of supplying the false and misleading information to AmTrust constituted a breach of their Master Broker Agreement. Thus, in Receivership, the FDIC sought to recoup those losses from USMC on AmTrust's behalf.

On March 8, 2013, USMC answered the Main Complaint and denied the operative allegations. In addition, on the same date, USMC filed a third-party complaint against the Condes. The third-party complaint sought indemnification from the Condes for any liability assessed against USMC in the main action.

On May 21, 2013, Lawrence and Michael answered the third-party complaint and denied the operative allegations.

On July 15, 2013, the Clerk of the Court noted Marian's default in this action.

On August 20, 2013, USMC moved for a default judgment against Marian.

On January 6, 2014, while the motion for a default judgment against Marian was pending, Judge Bianco granted USMC's application for leave to file an amended third-party complaint.

Accordingly, on January 27, 2014, USMC filed an amended third-party complaint, which, among other things, added one Edward A Christensen ("Christensen") and one Ira S. Ezratty ("Ezratty") as Cross–Defendants.

On February 11, 2014, Judge Bianco determined that USMC's motion for a default judgment against Marian was rendered moot by USMC's service of an amended third-party complaint.

On February 18, 2014, Magistrate Judge Tomlinson held a status conference. Apparently, Marian appeared *pro se* at the conference.

On February 19, 2014, Lawrence and Michael interposed an answer to USMC's amended third-party complaint. It appears that neither Marian nor Christensen answered the amended third-party complaint.

On March 28, 2014, Ezratty filed a motion, pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 8(a), 9(b), and 12(b)(6), seeking to dismiss any claims against him in the amended third-party complaint.

On May 14, 2014, the Clerk of the Court noted Christensen's default in this action.

On July 17, 2014, Judge Bianco issued an oral opinion granting Ezratty's motion to dismiss the amended third-party complaint, and also granting USMC leave to file a second amended third-party complaint.

On September 12, 2014, USMC filed a second amended third-party complaint ("SATPC"), which is now the operative pleading in this action.

Relevant here, the SATPC alleges that Ezratty is an attorney who is licensed to practice law in New York State and maintains an office in Mineola, New York. Further, the SATPC alleges that Lawrence retained Ezratty in connection with the loan transaction outlined above. In this regard, Ezratty allegedly had knowledge of the Condes's scheme and reviewed, counseled, and supervised Lawrence in his execution of numerous documents related to obtaining the loan, all of which are alleged to have contained materially false and misleading information. It is further alleged that Ezratty failed to disclose his knowledge of the fraudulent nature of the transaction to USMC.

The Court notes that the SATPC contains thirty-two causes of action. Of those

claims, USMC asserts the following causes of action against Ezratty: implied indemnity; comparative indemnity and contribution; declaratory judgment; equitable indemnity; fraud/intentional misrepresentation; fraud by omission; negligent misrepresentation; and negligence.

On September 23, 2014, Lawrence and Michael interposed an answer to the SATPC.

On October 16, 2014, Ezratty filed a motion, pursuant to Fed.R.Civ.P. 8(a), 9(b), and 12(b)(6), seeking to dismiss the SATPC as against him.

The motion was fully briefed on or about November 24, 2014.

On June 19, 2015, the case was reassigned to this Court.

For the reasons set forth in this opinion, Ezratty's motion to dismiss is granted.

## I. Background

The following facts are drawn from the Main Complaint and the SATPC. They are construed in favor of USMC.

### A. The FDIC's Role as the Receiver for AmTrust

The FDIC is a federal corporation, which, pursuant to the Federal Deposit Insurance Act ("FDIA"), is authorized to be appointed as a Receiver for failed insurance depository institutions. One such failed insurance depository institution is AmTrust, which was formerly known as Ohio Savings Bank.

On December 4, 2009, the Office of Thrift Supervision, an independent bureau of the United States Department of the Treasury, closed AmTrust. The FDIC was appointed as its Receiver.

The Main Complaint alleges that, under the FDIA, the FDIC succeeds to all claims held by banks for which it is appointed as the Receiver. Thus, the FDIC owns the claims that form the basis for this action and has standing to prosecute them in the place and stead of AmTrust.

### B. The Factual Allegations in the Main Complaint

#### 1. The Master Broker Agreement

On May 16, 2005, AmTrust and USMC entered into a contract known as a Master Broker Agreement ("MBA"). Apparently, the MBA was a standard agreement, which was intended to govern loan transactions between these parties. For example, the MBA set forth certain standards, procedures, and requirements that would apply when USMC presented proposed loan packages to AmTrust for funding.

A copy of the MBA was not provided for the Court's reference, but the Main Complaint describes several relevant provisions. In particular, under Paragraph 5.1 of the MBA, USMC expressly represented and warranted that all information contained in a given proposed loan package was complete, true, and correct.

Paragraph 5.2 of the MBA contains a list of representations and warranties made by USMC to AmTrust, including the following:

> Neither this Agreement nor any statement, report or other document furnished or to be furnished by [USMC] pursuant to this Agreement or in connection with the transactions contemplated hereby contains any material untrue statement of fact or omits to state a material fact necessary to make the statements contained herein or therein not misleading.

Main Compl. ¶ 14 (quoting MBA ¶ 5.2).

Paragraph 5.3 of the MBA provides that "[a]ll representations and warranties shall be true and correct as of each Closing Date and shall survive each Closing."

Paragraph 9.3 of the MBA allegedly contains an indemnity clause, which provides as follows:

> [USMC shall indemnify AmTrust and hold it harmless for] [a]ny and all losses, damages, penalties, fines, forfeitures, legal fees and related costs, judgments and other costs and expenses resulting from any claim, demand ... resulting from (a) a breach of any representation or warranty of [USMC] contained in this Agreement or (b) any act or omission of [USMC] or any of its partners, directors, members, shareholders, officers, agents or employees in originating any Mortgage Loan, including without limitation, incomplete or erroneous loan documentation, fraud by [USMC] in the origination of the Mortgage Loan, or violation of application law or regulation. The provisions contained in this Section shall survive termination of this Agreement.

Main Compl. ¶ 19 (quoting MBA ¶ 9.3).

### 2. The Alleged Fraudulent Scheme

As noted above, the gravamen of the Main Complaint is that the Condes perpetrated a scheme by which they defrauded USMC into underwriting a home mortgage loan. Allegedly in violation of the MBA, USMC then utilized the false and misleading information supplied by the Condes to secure funding from AmTrust for the subject home mortgage loan. As a result, allegedly, AmTrust was damaged.

The Court notes that, for purposes of this opinion, it will use the defined term "Scheme" to refer generally to the factual scenario outlined in the operative pleadings, namely, the allegedly fraudulent transaction orchestrated by the Condes. The Court's use of this term should not be construed as expressing a legal opinion as to the nature of the alleged conduct or the truth of the facts as alleged. That said, the Court will now recite the particular allegations concerning the Scheme:

Michael and Marian are married. At all relevant times, they owned a residential home located at 12 Crooked Oak Road in Port Jefferson, New York (the "Premises").

Allegedly, Michael and Marian filed for bankruptcy.

In order to avoid losing the Premises in bankruptcy, Michael and Marian allegedly devised a scheme that would create the appearance of a legitimate sale of the Premises. In this regard, they arranged to "sell" the Premises to Michael's father, Lawrence. This would allegedly permit Michael and Marian to continue residing at the Premises and, ultimately, to repurchase it from Lawrence.

In furtherance of this Scheme, Lawrence allegedly sought to obtain a home mortgage loan from USMC. It is alleged that Lawrence intended to use the loan proceeds to purchase the Premises. Is it further alleged that Lawrence intended to secure a loan in an amount greater than would be necessary to purchase the Premises, so that Michael and Marian could use the surplus loan proceeds to settle with the bankruptcy trustee and obtain a global release of their bankruptcy debts.

According to the Main Complaint, the Condes collectively endeavored to hide their Scheme from USMC. In this regard, Lawrence, posing as a bone fide purchaser, allegedly informed USMC that he desired to purchase the residency from one "Marian Campi." Campi is Marian's maiden name, and, allegedly, was used deliberately in order to conceal the true nature of the transaction from USMC, namely, an intra-familial sale.

### 3. AmTrust's Claim of Detrimental Reliance Upon USMC's Statements

USMC allegedly compiled various documents and information supplied by the

Condes into a proposed loan package, which was then submitted to AmTrust for approval. As noted above, this process allegedly was governed by the terms of the MBA.

Relying upon the documents and information supplied by USMC, AmTrust approved and funded a $1.5 Million loan (the "Loan") for the Condes. Michael and Marian allegedly continued to reside at the Premises and defaulted on the Loan.

AmTrust allegedly demanded that USMC indemnify it for the losses resulting from the issuance of the Loan, as provided in the MBA. To date, USMC has allegedly failed to indemnify AmTrust or the FDIC, which constitutes a breach of USMC's obligations under the MBA.

In the main action, the FDIC seeks to recover the full Loan amount, less any mitigation or foreclosure value of the property, together with associated damages, attorneys' fees, and costs.

## C. The Additional Allegations in the Second Amended Third–Party Complaint

In the SATPC, USMC adds the following relevant allegations.

### 1. The Bankruptcy Proceedings

On May 4, 2005, Michael and Marian filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the Eastern District of New York. On May 11, 2005, their petition was converted to one for relief under Chapter 7. Christensen represented Michael and Marian in the bankruptcy proceedings.

On March 10, 2006, Marian, Michael, Christensen, and the Chapter 7 bankruptcy trustee allegedly entered into a written document entitled "Amended Stipulation And Order Resolving the Trustee's Claims In and To the Debtor's Real Property

Located at 12 Crooked Oak Road, Port Jefferson, NY" (the "Stipulation"). The Stipulation allegedly memorialized an agreement that permitted Michael and Marian to "mortgage, convey, or transfer" the Premises in order to obtain funds to settle the trustee's claims.

Although the Stipulation was executed in March 2006, it is alleged that Marian, Michael, Lawrence, and Christensen began planning and acting in furtherance of the Scheme well before that time.

Consistent with the FDIC's description of the Scheme in the Main Complaint, USMC alleges in the SATPC that:

[N]otwithstanding any representations to the bankruptcy court, USMC, or others . . . (i) [Lawrence] would not occupy the Property but, in fact, [Michael and Marian] would continue to do so; (ii) [Michael and Marian] would retain all financial responsibility for the Property, including payments on any loan secured by the Property, property taxes, maintenance, and repairs; and (iii) then, in a year or so, [Lawrence] would deed the property back to [Michael and Marian].

SATPC ¶ 14.

Of importance, USMC alleges that, at all relevant times, it was ignorant of the true facts and circumstances surrounding the sale and purchase of the Premises, including the fact that the Condes were related to one another.

### 2. The Alleged Implementation of the Fraudulent Scheme

Following the execution of the Stipulation, Marian allegedly again retained Christensen to represent her in connection with the conveyance of the Premises to Lawrence, who allegedly retained Ezratty to represent him.

Central to USMC's claims against Ezratty is the following allegation. The

Court notes that in reproducing the following quotation, it has replaced the terms "The Borrower" with "Lawrence"; "The Seller Defendants" with "Michael and Marian"; and· "Property" with "Premises":

[P]rior to March 2006, Lawrence, and/or Michael and Marian, and/or Christensen provided Ezratty with a copy of the Stipulation and/or informed Ezratty of the sum and substance of the Stipulation and Scheme, including the following: (i) that Lawrence and Michael and Marian were related; (ii) that Lawrence was purchasing the Premises pursuant to the Stipulation and solely for the purpose of facilitating Michael's and Marian's extraction of equity from the Premises and remov[ing] the impending threat of losing the Premises through the Bankruptcy Case; (iii) that Lawrence did not intend to occupy the Premises; (iv) that Michael and Marian intended to remain living in the Premises even after the purchase/sale transaction was consummated; (v) that Lawrence did not intend on assuming any financial responsibility for the Premises, including payments on any loan secured by the Premises, property taxes, maintenance, or repairs, but that Michael and Marian would continue to be responsible for those obligations; and (vi) within a year or so, Lawrence would deed the Premises back to Michael and Marian.

SATPC ¶ 18 (underscore supplied). It is Ezratty's alleged knowledge of these important facts that supports many, if not all, of USMC's claims against him.

Further, the SATPC alleges that Ezratty, with the specific knowledge outlined above, reviewed, counseled, and/or supervised Lawrence in preparing multiple fraudulent documents that were relied upon by USMC and AmTrust in approving the Loan, including a Uniform Residential Loan Application (the "Application"). It is alleged that the Application, which was used to apply for financing to purchase the Premises, falsely indicated that Lawrence intended to occupy the Premises as his primary residence. USMC asserts that, without such a representation, Lawrence would not have been eligible for financing or would have been offered less favorable financing terms. Allegedly, Lawrence also supplied a "Disclosure Notice" in which he reiterated his intention to occupy the Premises within 30 days of closing.

In addition, Lawrence allegedly supplied a document entitled "Borrower's Certification & Authorization," which certified that the information contained in the Application and related documents was true and complete; contained no misrepresentations; and did not omit any pertinent information.

In or about March 2006, Marian and Lawrence allegedly entered into a contract for the sale of the Premises. In connection with the execution of the contract, Christensen represented Marian and Ezratty represented Lawrence.

On April 7, 2006, the closing took place (the "Closing"). Ezratty and Christensen attended the Closing on behalf of Lawrence and Marian, respectively.

It is alleged that, at the Closing, Ezratty again reviewed, counseled, and/or supervised Lawrence in executing fraudulent documents that were relied upon by USMC and AmTrust in approving the Loan. These allegedly included the following: (i) a final Uniform Residential Loan Application, which affirmed Lawrence's representation that the Premises would be his primary residence; (ii) a handwritten document entitled "Escrow Agreement" in which Lawrence, Marian, Michael, Christensen, and Ezratty each acknowledged and agreed that certain sums would remain in escrow pending satisfaction of certain liens and judgments held by bank-

ruptcy debtors of Michael and Marian; (iii) a purchase affidavit in which Lawrence represented that he resided at the Premises; (iv) a property tax assessment disclosure in which Lawrence and Ezratty allegedly represented that the transfer of title to the Premises did not involve a sale between relatives or former relatives; and (v) a document entitled "Notice of No Oral Agreements" in which Lawrence represented that there existed no oral agreements between the parties. These documents are collectively referred to as the "Closing Documents."

USMC maintains that if, at any time prior to, or during the Closing, the Condes, Christensen, or Ezratty had disclosed any of the facts outlined above, the Loan would not have been approved and funded.

### 3. The Relevant Causes of Action

Based on the allegations contained in the Main Complaint and SATPC, USCMC asserts the following claims against Ezratty, which are presently before the Court: (i) the Twenty–Fifth Cause of Action based on Implied Indemnity; (ii) the Twenty–Sixth Cause of Action based on Comparative Indemnity and Contribution; (iii) the Twenty–Seventh Cause of Action, which seeks a Declaratory Judgment that Ezratty is obligated to indemnify USMC; (iv) the Twenty–Eighth Cause of Action based on Equitable Indemnity; (v) the Twenty–Ninth Cause of Action based on Fraud/Intentional Misrepresentation; (vi) the Thirtieth Cause of Action based on Fraud by Omission; (vii) the Thirty–First Cause of Action based on Negligent Misrepresentation; and (viii) the Thirty–Second Cause of Action based on Negligence.

On October 16, 2014, Ezratty filed the instant motion seeking to dismiss each of USMC's claims against him, pursuant to Fed.R.Civ.P. 8(a), 9(b), and 12(b)(6), for failure to state a claim upon which relief can be granted. Ezratty also asserts that certain of the relevant claims are time barred.

The Court will consider each of the parties' contentions below.

### II. Discussion

### A. The Applicable Legal Standards

### 1. The Standard for Dismissal under Fed.R.Civ.P. 12(b)(6)

Under Fed.R.Civ.P. 8(a)(2), a pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard announced in Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

Rather, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955.

Furthermore, claims based on fraud are subject to the heightened pleading standard found in Fed.R.Civ.P. 9(b). In particular, a party asserting fraud "must state with particularity the circumstances constituting fraud or mistake."

Fed.R.Civ.P. 9(b). "Rule 9(b) is satisfied when the complaint specifies 'the time, place, speaker, and content of the alleged misrepresentations;' how the misrepresentations were fraudulent; and the details that 'give rise to a strong inference that the defendant[ ] had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Schwartzco Enters. LLC v. TMH Mgmt., LLC,* 60 F.Supp.3d 331, 344 (E.D.N.Y.2014) (Spatt, J.) (quoting *Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353, 359 (2d Cir.2013)).

## B. As to Whether the Court May Consider Evidence Outside the Pleading

Ezratty has provided the Court with various items of documentary evidence in support of the instant motion. In particular, he submitted copies of the various Closing Documents and the deed conveying the Premises from Marian to Lawrence (the "Deed").

USMC filed formal objections to the introduction of this evidence and to the declaration of attorney Brett A. Scher, Esq. to which it is attached. In particular, USMC principally contends that Scher was not a party to the underlying Loan transaction and, therefore, lacks the personal knowledge necessary to authenticate these items.

As a threshold issue, the Court must determine whether the evidence proffered by Ezratty may be considered in adjudicating the instant motion. In this regard, it is well-settled that "[t]he materials a court may consider when deciding a motion to dismiss under Rule 12(b)(6) are limited." *Armand v. Osborne,* 11–cv–4182, 2014 WL 723381, at *3, 2014 U.S. Dist. LEXIS 23911, at *9 (E.D.N.Y. Feb. 24, 2014). In fact, "a court considering a ... motion to dismiss for failure to state a claim generally may not consult evidence outside the pleadings." *Vailette v. Lind-*

say, 11–cv–3610, 2014 WL 4101513, at *3, 2014 U.S. Dist. LEXIS 114701, at *8 (E.D.N.Y. Aug. 18, 2014). Rather, in adjudicating such a motion, the Court may only consider:

(1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Environmental Servs. Inc. v. Recycle Green Servs., Inc.,* 7 F.Supp.3d 260, 270 (E.D.N.Y.2014) (quoting *In re Merrill Lynch & Co.,* 273 F.Supp.2d 351, 356–57 (S.D.N.Y.2003)).

"Under Fed.R.Civ.P. 12(d), if any other 'matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56' and '[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.'" *Aiola v. Malverne Union Free Sch. Dist.,* 115 F.Supp.3d 321, 342, 15–cv–064, 2015 WL 4276187, at *18, 2015 U.S. Dist. LEXIS 91106, at *44 (E.D.N.Y. July 13, 2015) (Spatt, J.) (quoting Fed.R.Civ.P. 12(d); *Vailette,* 2014 WL 4101513, *7, 2014 U.S. Dist. LEXIS 114701, at *18 ("In other words, if parties submit extrinsic evidence, the court has two options: (1) it may exclude such evidence and decide the motion on the complaint alone or (2) convert the

motion to one for summary judgment and consider the extrinsic evidence")).

■ The Court notes that "not every document referred to in a complaint may be considered incorporated by reference and thus introduced by the moving party in support of a motion to dismiss." *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1015 (1st Cir.1988), *cert. denied*, 488 U.S. 821, 109 S.Ct. 65, 102 L.Ed.2d 42 (1988) (cited with approval in *Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 156–57 (2d Cir.2006)). However, where a document is "not merely referred to" in the Plaintiff's complaint, "but [is] absolutely central to it," courts will consider such evidence on a motion pursuant to Rule 12(b)(6). *Id.* (affirming district court's decision to consider documentary evidence that the plaintiffs "unquestionably would have had to offer ... in order to prove their case"). Indeed, in order for extrinsic evidence to be considered on a Rule 12(b)(6) motion, it is "a necessary prerequisite" that the " 'plaintiff [have] rel[ied] heavily on the terms and effect of the document[s] in drafting the complaint ...; mere notice or possession is not enough.' " *Global Network Communs.*, 458 F.3d at 156 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (internal brackets and emphasis omitted)).

The Second Circuit has expounded on these rules, noting that "generally, the harm to the plaintiff when a court considers material extraneous to a complaint is the lack of notice that the material may be considered." *Chambers*, 282 F.3d at 153 (citing *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991)). "Accordingly, 'where [a] plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6)

motion into one under Rule 56 is largely dissipated.' " *Id.* (quoting *Cortec*, 949 F.2d at 47).

Applying these principles, the Court concludes that the Closing Documents come within the recognized categories of evidence that is appropriate to consider on a Rule 12(b)(6) motion.

In reaching this conclusion, the Court is persuaded by the Second Circuit's reasoning in *Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir.1991). *Kramer* involved the merger of Time Incorporated and Warner Communications, Inc. to form the entity now known as Time Warner Inc. In connection with the merger, the companies issued several documents to Warner's shareholders outlining the terms of the proposed merger, including a joint proxy statement and prospectus; a formal offer from Time detailing its planned purchase of Warner's stock; and a letter from Warner recommending acceptance of Time's offer. These documents were filed with the Securities and Exchange Commission ("SEC").

Ultimately, Warner's shareholders tendered their stock in accordance with the documentation they had been provided. However, when the securities they received as compensation for the tender began trading on the market, their value was lower than the shareholders had expected. Accordingly, the plaintiff, a former Warner shareholder, commenced a class action alleging *inter alia* that Time's purchase offer and the related documentation contained fraudulent misrepresentations and omissions upon which the putative class had relied to its detriment.

The defendant moved pursuant to Fed. R.Civ.P. 12(b)(6) to dismiss the pleading and, in support of its motion, provided the court with certain documentary evidence, including the joint proxy statement and

purchase offer at the heart of the dispute. The Second Circuit affirmed the district court's reliance upon these documents in dismissing the complaint:

> [I]t is highly impractical ... to preclude a district court from considering such documents when faced with a motion to dismiss a securities action based on allegations of material misrepresentations or omissions. First, the documents are required by law to be filed with the SEC, and no serious question as to their authenticity can exist. Second, the documents are the very documents that are alleged to contain the various misrepresentations or omissions and are relevant not to prove the truth of their contents but only to determine what the documents stated. Third, a plaintiff whose complaint alleges that such documents are legally deficient can hardly show prejudice resulting from a court's studying of the documents.

*Kramer*, 937 F.2d at 774.

■ In this case, as in *Kramer*, the Closing Documents are the very documents that USMC alleges to contain the misrepresentations and omissions forming the basis of its claims against Ezratty. In this regard, the Court notes that the SATPC specifically identifies each of the Closing Documents in individualized subparagraphs and states that "Ezratty reviewed, counseled, and supervised [Lawrence] in the execution of" those documents, "all of which contained materially false representations, and all of which USMC continued to rely upon in connection with the Loan." SATPC ¶ 29(a)-(e). Under these circumstances, the Court conforms to the Second Circuit's opinion in *Kramer* that USMC, as the party whose complaint alleges that the Closing Documents are legally deficient, cannot legitimately complain of prejudice resulting from the Court's review of those documents.

■ Consequently, the Court overrules USMC's objection to the introduction of these documents, which is based solely on the assertion that Ezratty's counsel, whose declaration serves as the vehicle for their submission to the Court, was not a party to the underlying Loan transaction. In this regard, the Court notes that, in order to consider documentary evidence on a motion to dismiss, " 'it must be clear on the record that *no* dispute exists regarding the authenticity or accuracy of the document.' " *Fine v. ESPN*, 11 F.Supp.3d 209, 221 (N.D.N.Y.2014) (emphasis in original) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir.2010)). Moreover, the Court notes that this " 'no dispute' requirement has been interpreted strictly: even implicit, conclusory, contradictory, or implausible objections to the authenticity or accuracy of a document render consideration impermissible." *Id.* (collecting cases). However, these principles do not alter the Court's reasoning.

In this case, it is clear that USMC does not actually dispute the authenticity or accuracy of the documents in any material way. In the Court's view, merely stating that counsel lacks personal knowledge of the documents, without specifically challenging their veracity, is insufficient to call their authenticity into question and prevent the Court from considering them. This is particularly true where, as here, the documents undeniably form a crucial basis for USMC's claims in this action.

Accordingly, the Court concludes that it may properly consider the Closing Documents in adjudicating the instant motion.

The Court reaches a similar conclusion with respect to the Deed. USMC contends that the Court should not consider the Deed because it is neither referenced directly in the SATPC nor incorporated by

reference. Moreover, USMC contends that Ezratty's counsel lacks sufficient personal knowledge of the Deed to properly authenticate it. The Court disagrees.

Again, USMC raises these objections superficially, without ever actually challenging the authenticity or accuracy of the Deed itself. Moreover, USMC's contention that the Deed is not mentioned in the SATPC is unpersuasive. Although the SATPC does not directly refer to the Deed's contents, it is nevertheless integral to the pleading. In this regard, there can be no question that a critical element of USMC's claims involves the transfer of the Premises, which is reflected in the Deed. In fact, the allegedly fraudulent Scheme to convey the Premises from Michael and Marian to Lawrence, via the Deed, is the singular event buttressing all of the claims in this action. Under these circumstances, there is no rational basis for concluding that the Deed is not integral to or incorporated by reference in the SATPC.

Accordingly, the Court overrules Ezratty's objections relating to the Closing Documents and the Deed and will consider such evidence in adjudicating the instant motion.

However, in support of his reply, Ezratty also attached various e-mail communications among counsel relating to this action. These documents were submitted solely in response to USMC's authenticity objections, and not in connection with any of the parties' underlying contentions. The Court finds Ezratty's objections to be without merit and it need not further address these e-mails.

### C. As to Whether USMC Has Plausibly Alleged a Claim Based on Fraud/Intentional Misrepresentation

■ USMC styled its Twenty–Ninth Cause of Action as one sounding in "Fraud/Intentional Misrepresentation."

Under New York law, a claim for intentional misrepresentation is analytically identical to a claim for fraud. *See Assoun v. Assoun*, 14–cv–1368, 2014 U.S. Dist. LEXIS 179762 (S.D.N.Y. Sept. 19, 2014) (Report and Recommendation), *adopted*, 2015 WL 110106, at *5, 2015 U.S. Dist. LEXIS 1506, at *6 (S.D.N.Y. Jan. 6, 2015) (quóting *Sabre Int'l Sec., Ltd. v. Vulcan Capital Mgmt., Inc.*, 95 A.D.3d 434, 439, 944 N.Y.S.2d 36 (1st Dep't 2012)).

### 1. The Applicable Law

■ Generally, fraud can be established in two ways, namely, by affirmatively making a false representation or by failing to discharge a duty of disclosure. Both are implicated in this case.

### a. Fraud by Affirmative Misrepresentation

■ First, a plaintiff may state a claim based on fraud by alleging: "(1) a misrepresentation or omission of a material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which is the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Schwartzco*, 60 F.Supp.3d at 344 (citing *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir.2001)). As noted above, these elements must be pled according to the heightened pleading standard found in Rule 9(b).

### b. Fraud by Failure to Disclose

■ Second, a claim based on fraud may also be pled by alleging that the defendant owed a duty of disclosure to the plaintiff, and breached that duty by intentionally concealing or omitting relevant information, which resulted in harm to the plaintiff.

■ A duty of disclosure generally arises in three circumstances: (i) the parties are in a fiduciary or confidential relationship; (ii) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party; and (iii) one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge. *See 3801 Beach Channel, Inc. v. Shvartzman,* 05–cv–207, 2010 WL 6471990, at *6–*7, 2010 U.S. Dist. LEXIS 142436, at *25–*26 (E.D.N.Y. Sept. 30, 2010) (Report and Recommendation), *adopted,* 2011 WL 1303812, 2011 U.S. Dist. LEXIS 35013 (E.D.N.Y. Mar. 30, 2011); *see also Remington Rand Corp. v. Amsterdam–Rotterdam Bank, N.V.,* 68 F.3d 1478, 1484 (2d Cir.1995) (same).

■ A plaintiff pursuing this theory " 'must allege [the] facts giving rise to a duty to disclose' with the specificity required by Rule 9(b)." *Miller v. HSBC Bank USA, N.A.,* 13–cv–7500, 2015 WL 585589, at *7, 2015 U.S. Dist. LEXIS 16736, at *16–*17 (S.D.N.Y. Feb. 11, 2015) (citing *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.,* 85 F.Supp.2d 282, 296 (S.D.N.Y.2000), *aff'd,* 2 Fed.Appx. 109 (2d Cir.2001); *Merrill Lynch, Pierce, Fenner & Smith v. Young,* 91–cv–2923, 1994 WL 88129, at *11, 1994 U.S. Dist. LEXIS 2929, at *33–*34 (S.D.N.Y. Mar. 15, 1994) (stating that plaintiff must plead with "particularity" the "context in which a duty to disclose may have arisen," and "[i]nferences and allusions" to circumstances under which "a general duty to disclose may arise do not withstand 9(b) scrutiny")).

In this regard, the Second Circuit has "vigorously enforced Rule 9(b)" where, as here, allegations of fraud by omission are made against professionals, such as attorneys. *See Quintel Corp., N.V. v. Citibank,*

*N.A.,* 589 F.Supp. 1235, 1243–44 (S.D.N.Y. 1984) (citing *Denny v. Barber,* 576 F.2d 465 (2d Cir.1978); *Segal v. Gordon,* 467 F.2d 602, 607 (2d Cir.1972); *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 444 (2d Cir.1971); *O'Neill v. Maytag,* 339 F.2d 764, 768 (2d Cir.1964); *Rich v. Touche Ross & Co.,* 68 F.R.D. 243, 246–47 (S.D.N.Y.1975)).

#### c. The Requirement of Pleading with Specificity

■ No matter which theory of fraud a plaintiff seeks to pursue, a well-pleaded complaint must contain "the who, what, when, where and how of the alleged fraud." *Bauman v. Mount Sinai Hosp.,* 452 F.Supp.2d 490, 503 (S.D.N.Y.2006); *see Miller,* 2015 WL 585589, at *7, 2015 U.S. Dist. LEXIS 16736, at *16–*17 (finding fraud allegations insufficient under Rule 9(b) where the plaintiff "d[id] not identify individuals, dates or any factual context for the alleged misrepresentations and omissions by [the defendant]" and has not "identif[ied] the alleged omissions with any meaningful degree of specificity— broad categorical descriptions ... are not enough").

■ Further, as a general matter, allegations based upon information and belief cannot sustain a claim of fraud. *See Care Envtl. Corp. v. M2 Techs., Inc.,* 05–cv–1600, 2006 WL 148913, at *8, 2006 U.S. Dist. LEXIS 2934, at *22–*23 (E.D.N.Y. Jan. 18, 2006) ("Because allegations of fraud must be pled with particularity, fraud pleadings cannot generally be based upon information and belief") (citing *Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir. 1972)).

A limited exception to this rule exists with respect to matters which are peculiarly within the opposing party's knowledge. *See Woods v. Maytag Co.,* 10–cv–559, 2010 WL 4314313, 2010 U.S. Dist. LEXIS

116595 (E.D.N.Y. Nov. 2, 2010) (Spatt, J.) (quoting *Luce v. Edelstein,* 802 F.2d 49, 54 n. 1 (2d Cir.1986)); *see also Wexner v. First Manhattan Co.,* 902 F.2d 169, 172 (2d Cir.1990) (same). However, even as to those matters, a viable complaint "must adduce specific facts supporting a strong inference of fraud." *See id.; see also Di-Vittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir.1987) (noting that allegations based upon information and belief "must be accompanied by a statement of the facts upon which the belief is based").

### 2. The Analysis

### a. The Contention that Ezratty Made an Affirmative Misrepresentation

USMC alleges that, "[a]t the closing, Ezratty reviewed, counseled, and supervised [Lawrence] in the execution of ... a property tax assessment disclosure wherein [Lawrence] and Ezratty *each endorsed and represented,* among other things, that the transfer of title to the [Premises] did not involve a sale between relatives or former relatives, when in fact they knew that was not the case." SATPC ¶ 29(d) (emphasis supplied). USMC alleges that if it had known, prior to the Closing, that Lawrence was related to Michael and Marian, the Loan would not have been approved. *See* SATPC ¶ 30.

The document to which these allegations relate is entitled Form RP–5217, Real Property Transfer Report. As noted above, a copy of this document was supplied by Ezratty for the Court's reference. The form identifies Lawrence as the purchaser of the Premises and one Marian Campi as the seller. The form lists the sale price as $1.5 Million. Of relevance here, a portion of the form provides as follows:

**15. Check one or more of these conditions as applicable to transfer:**

| | | |
|---|---|---|
| A | | Sale Between Relatives or Former Relatives |
| B | | Sale Between Related Companies or Partners in Business |
| C | | One of the Buyers is also a Seller |
| D | | Buyer or Seller is a Government Agency or Lending Institution |
| E | | Deed Type not Warranty or Bargain and Sale (Specify Below) |
| F | | Sale of Fractional or Less than Fee Interest (Specify Below) |
| G | | Significant Change in Property Between Taxable Status and Sale Dates |
| H | | Sale of Business is Included in Sale Price |
| I | | Other Unusual Factors Affecting Sale Price (Specify Below) |
| J | | None |

In this case, the box next to "Sale Between Relatives or Former Relatives" is not checked, and the box to "None" is checked.

In addition, a certification with spaces for attestations appears at the bottom of the form. The Court will reproduce this portion of the document in full:

CERTIFICATION

I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

| BUYER | | | BUYER'S ATTORNEY | |
|---|---|---|---|---|
| BUYER SIGNATURE | | DATE | LAST NAME | FIRST NAME |
| STREET NUMBER | STREET NAME (AFTER SALE) | | AREA CODE | TELEPHONE NUMBER |
| CITY OR TOWN | STATE | ZIP CODE | | |
| | SELLER | | | |

[CUT OFF IN COURT EXHIBIT]

The Court's review of this document reveals that Lawrence signed his name on the line labeled "buyer signature." In addition, Marian signed her name in the corresponding space for the seller. Of importance, there is no space labeled "buyer's attorney signature." There also is no space for the buyer's attorney to provide an address or the date on which he or she completed the form. Rather, the form calls only for the attorney's printed name and telephone number. Consistent with these directions, the form in this case reads, in printed lettering, "Ezratty, Ira" and includes a phone number associated with the law firm of Ezratty Ezratty & Levine LLP.

 USMC contends that the identification of Ezratty as the buyer's attorney on this form constitutes an "endorsement" and an affirmative "representation" by him as to the truth of the information contained on the form. In this regard, USMC asserts that Ezratty is "the speaker" of such information, including and especially the indication that Lawrence and Marian are not related to one another. The Court disagrees.

In the Court's view, the identification of Ezratty as the buyer's attorney cannot reasonably be considered as an affirmative representation by him as to the truth of the information contained on the RP–5217

form. The Court notes that, as to this point, neither party has cited supporting authority for its respective position. In addition, the Court's own research has not revealed applicable decisional law. However, the New York State Department of Taxation and Finance has promulgated instructions for completing the RP–5217, which, under the circumstances, this Court finds useful. *See* RP–5217 Real Property Transfer Report Instructions, *available at* www.tax.ny.gov/pdf/current_forms/orpts/rp5217ins.pdf (last visited Sept. 3, 2015).

In relevant part, the instructions state that "[b]y *signing* the RP–5217 form, the *buyer* is certifying that all of the items of information entered on the form are true and correct." (emphasis supplied). Therefore, it is clear that only the designated signatories, namely Lawrence and Marian, are deemed to attest to the information supplied.

Moreover, the instructions explicitly state that "[t]he Law requires the signature of BOTH the buyer and the seller and NOT agents to the transfer." (upper case in original). The instructions further state that both the buyer and the seller "must sign and date" the certification portion of the form, but that only the name and telephone number of the buyer's attorney need be provided. It goes on to state that

"[i]f the buyer does not have an attorney enter 'NONE'" (upper case in original).

These official instructions make clear that the mere identification of an attorney on the RP–5217 form does not constitute an affirmative representation by the attorney as to the truth of the form's contents. On the contrary, the form and its official instructions expressly contemplate that the buyer and seller, as the parties to the underlying transaction, and signatories to the official disclosure form, are the only individuals who are responsible for the representations made in the form.

Accordingly, to the extent Ezratty seeks to dismiss the Twenty–Ninth Cause of Action on the grounds that he did not make a false representation on the RP–5217 form, his motion is granted.

#### b. The Allegations that Ezratty Failed to Discharge a Duty to Disclose

A closer question is presented by USMC's contention that Ezratty committed fraud by failing to disclose to USMC certain relevant information regarding the nature of the Condes's transaction. As noted above, the touchstone of this claim is a duty of disclosure running from Ezratty to USMC.

█ In this regard, USMC appears to concede that it was not in a fiduciary or confidential relationship with Ezratty. Thus, in asserting that Ezratty owed it a duty of disclosure, USMC relies on the two-pronged standard enunciated by the Second Circuit in *Remington Rand Corp.*, *supra*, namely:

> In the absence of a fiduciary relationship, a duty to disclose may arise if: (1) one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party; or (2) one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.

68 F.3d at 1484 (internal quotation marks and citations omitted).

Ezratty contends that the claims against him in the SATPC must be dismissed because USMC does not allege enough plausible facts to satisfy either prong of this standard and, therefore, there is no basis for concluding that he owed a duty of disclosure to USMC. In opposition, USMC contends that it has stated enough plausible facts to satisfy *both* prongs of the *Remington* standard.

Each of the parties' contentions will be discussed more fully below.

#### i. As to Whether Ezratty Made a Partial or Ambiguous Statement that Required Additional Disclosure to Avoid Misleading USMC

As to the first prong of the *Remington* standard, USMC again asserts that Ezratty certified false information on the RP–5217 form. In this regard, USMC reiterates its contention that the allegedly false information contained on that form, namely, that Lawrence and Marian are not related to one another, constitutes a partial or ambiguous statement by Ezratty that required additional disclosure to avoid misleading USMC.

The Court rejects this contention for the reasons already discussed above. In particular, the Court finds that the mere identification of Ezratty as the buyer's attorney on the RP–5217 form does not amount to an affirmative representation by him as to the truth of the form's contents. Accordingly, this contention cannot give rise to a duty of disclosure.

#### ii. As to Whether Ezratty Possessed Superior Knowledge, Not Readily Available to USMC, and Knew that USMC was Acting on the Basis of Mistaken Knowledge

As to the second prong of the *Remington* standard, USMC contends that: (i)

Ezratty possessed superior knowledge of the underlying transaction; (ii) which was not readily available to USMC; and (iii) he knew that USMC was acting on the basis of mistaken knowledge in evaluating Lawrence's eligibility for a home mortgage loan.

At the outset, the Court takes special note of the fact that Ezratty is an attorney and, therefore, the standard to which USMC's allegations are held is necessarily higher than it might be with respect to a layperson. *See Quintel,* 589 F.Supp. at 1243–44 (noting that the Second Circuit has "vigorously enforced Rule 9(b)" in cases involving fraud allegations against professionals); *DiVittorio,* 822 F.2d at 1247 (noting that a pleading under Rule 9(b) must be sufficient, *inter alia,* to protect a defendant from harm to its reputation or goodwill by unfounded allegations of fraud).

In this case, it is not alleged that Ezratty represented USMC; that Ezratty owed a fiduciary duty to USMC; that Ezratty and USMC were in privity; or that they enjoyed some other special relationship that was so close as to approach privity. There also is no plausible allegation that Ezratty was a party to the underlying transaction or that he made any relevant statement or representation upon which USMC relied. On the contrary, USMC appears to allege only that Ezratty acted as Lawrence's agent in connection with his purchase of the Premises and was, therefore, under an obligation to disclose to third-party non-clients whatever relevant information he possessed. Moreover, USMC contends that his failure to do so exposes him to liability for fraud.

However, USMC cites to no controlling authority for the existence of such an expansive duty, and the Court's own research has revealed none. Actually, the prevailing law appears to dictate a far narrower approach—one that insulates attorneys from liability for all but the most overt actions which are designed specifically to induce third-parties' reliance. In the Court's view, the SATPC does not state any facts by which it could be considered plausible that Ezratty owed such a duty to USMC.

In reaching this conclusion, the Court is persuaded by the rule enunciated in *Doehla v. Wathne Ltd.,* where the court noted that a lawyer "may owe a duty of care to his clients by virtue of a special relationship of confidence and trust that arises from his training and expertise," but that, as a "general rule," a lawyer "does not owe a fiduciary duty to non-clients with whom he is not in privity." *Doehla,* 98–cv–6087, 1999 WL 566311, at *19, 1999 U.S. Dist. LEXIS 11787, at *57 (S.D.N.Y. Aug. 3, 1999) (citing *Schlaifer Nance & Co., Inc. v. Estate of Warhol,* 927 F.Supp. 650, 661 (S.D.N.Y.1996)). In fact, in the absence of a fiduciary relationship, "New York courts have imposed liability on professionals for their failure to speak with care to third-parties ... only where they have a special relationship with the third-party that 'approaches that of privity.'" *Id.* at *19, 1999 U.S. Dist. LEXIS 11787, at *57–*58 (quoting *Prudential Ins. Co. of America v. Dewey, Ballantine,* 80 N.Y.2d 377, 382, 590 N.Y.S.2d 831, 605 N.E.2d 318 (1992)).

In this regard, the court in *Doehla* noted:

> [T]he only cases of which this Court is aware holding that an attorney had, or was properly alleged to have had, a relationship approaching privity with a third-party are those in which the attorney issued an 'opinion letter' to his client in connection with a transaction for the purpose of reliance by the third-party on its contents. Such cases meet the standard established under New York law because the lawyer clearly holds himself

out to be an expert in a particular area, reliance on the opinion by the third-party is the "end and aim" of the engagement of the lawyer, and therefore a special relationship exists justifying reliance on the lawyer's speech.

*Doehla,* 1999 WL 566311, at *20, 1999 U.S. Dist. LEXIS 11787, at *60–*61 (citing *Prudential,* 80 N.Y.2d at 385, 590 N.Y.S.2d 831, 605 N.E.2d 318; *Meranus v. Gangel,* 85–cv–9313, 1989 WL 240072, at *4–*5, 1989 U.S. Dist. LEXIS 9294, at *13–*15 (S.D.N.Y. Aug. 19, 1989); *Vereins–Und Westbank, AG v. Carter,* 691 F.Supp. 704, 710 (S.D.N.Y.1988)).

Thus, in *Doehla,* the court found that no duty of disclosure existed because, as here, (i) the attorney in question had not represented the plaintiff, and (ii) there was no special relationship between the attorney and the plaintiff which approached privity. In addition, the court noted that the complaint had failed to allege that the purpose or "end and aim" of the lawyer's engagement was to induce reliance by the plaintiff on allegedly negligently furnished declarations. In particular, the attorney in *Doehla* had "issued no opinion letter or report upon which [the plaintiff] was urged to rely" and "[e]ven if he had, there [wa]s nothing to suggest that [the lawyer] held himself out as having expertise on the particular subject involved."

██ Applying these principles, the Court finds that the SATPC fails to state facts which are sufficient to create a duty running from Ezratty to USMC. In particular, in this case, as in *Doehla,* there appears to be no dispute that Ezratty did not represent USMC; did not hold himself out as an expert on any relevant subject matter; and did not render an opinion or written report upon which he intended USMC to rely. Further, in the Court's view, it is implausible to conclude that the "end and aim" of Ezratty's engagement was to induce USMC's reliance on fraudu-

lent declarations. On the contrary, as noted above, there is no plausible allegation that Ezratty even made a statement or representation regarding the underlying transaction. It has been recognized under similar circumstances that such nondisclosure, without more, cannot form the basis for a fraud claim. *See DiVittorio,* 822 F.2d at 1249 (affirming district court's dismissal of a complaint under Rule 9(b) where there were no allegations linking attorneys "in any specific way to any fraudulent misrepresentation or omission"); *Quintel,* 589 F.Supp. at 1244 ("Nondisclosure unaccompanied by some act or conduct which deceives the plaintiff is not a misrepresentation" (citations omitted)).

Based on the foregoing, the Court finds that USMC failed to state enough specific facts regarding the "context in which [Ezratty's] duty to disclose may have arisen," to satisfy Rule 9(b). *Merrill Lynch,* 1994 WL 88129, at *11, 1994 U.S. Dist. LEXIS 2929, at *33–*34. Accordingly, to the extent Ezratty seeks to dismiss the Twenty–Ninth Cause of Action on the grounds that he did not have a duty of disclosure to USMC, his motion is granted.

### D. As to Whether USMC Has Plausibly Alleged Claims Based on Fraud by Omission; Negligent Misrepresentation; and Negligence

USMC's Thirtieth Cause of Action based on "Fraud by Omission"; its Thirty–First Cause of Action based on "Negligent Misrepresentation"; and its Thirty–Second Cause of Action based on "Negligence," are all premised on virtually identical facts and legal theories as its Twenty–Ninth Cause of Action, discussed more fully above. In particular, each of these claims alleges, in one form or another, that Ezratty is liable to USMC for failing to disclose allegedly superior knowledge of the Scheme to USMC. Thus, the viability of each of these claims hinges on the exis-

tence of a duty of disclosure running from Ezratty to USMC. Necessarily, having previously found that Ezratty owed no such duty of disclosure, none of these claims is viable as against him. *See, e.g., First Hill Partners v. BlueCrest Capital Mgmt. Ltd.,* 52 F.Supp.3d 625, 638–39 (S.D.N.Y.2014) (dismissing a claim based on fraud by omission where the plaintiff failed to establish any of the three instances giving rise to a duty of disclosure); *Beach v. Citigroup Alternative Invs. LLC,* 12–cv–7717, 2014 WL 904650, at *21, 2014 U.S. Dist. LEXIS 30032, at *58–*59 (S.D.N.Y. Mar. 7, 2014) (observing that "the relationship that must be alleged to sustain a negligent misrepresentation claim is the same as the relationship that must be alleged to sustain a claim of fraudulent concealment," and where, as here, the plaintiff "failed to allege the existence of a relationship ... that would give rise to a duty of disclosure," the negligent misrepresentation claim warranted dismissal); *Putnam Bank v. Ikon Office Solutions,* 10–cv–1067, 2011 WL 2633658, at *3, 2011 U.S. Dist. LEXIS 71593, at *8 (D.Conn. July 5, 2011) (dismissing a claim based on negligence where the plaintiff failed to allege facts showing that the defendant owed it a duty to disclose relevant information). Accordingly, for the same reasons the Court dismisses the claim based on fraud, it dismisses the claims based on fraud by omission, negligent misrepresentation, and negligence.

Therefore, Ezratty's motion, to the extent it seeks to dismiss the Thirtieth, Thirty–First, and Thirty–Second Causes of Action for failure to state a claim, is granted.

**E. As to Whether USMC Has Plausibly Alleged Claims Based on Implied Indemnity; Comparative Indemnity; Declaratory Judgment; and Equitable Indemnity**

USMC's Twenty–Fifth, Twenty–Sixth, Twenty–Seventh, and Twenty–Eighth Causes of Action assert overlapping theories of common law indemnification and contribution. As with USMC's other claims, discussed above, the causes of action seeking indemnification are premised on a duty running from Ezratty to USMC. *See, e.g., Raquet v. Braun,* 90 N.Y.2d 177, 183, 659 N.Y.S.2d 237, 681 N.E.2d 404 (1997) (noting that, under New York law, "the key element of a common-law cause of action for indemnification is not a duty running from the indemnitor to the injured party, but rather is a separate duty owed to the indemnitee by the indemnitor"). USMC has acknowledged that the issue of whether Ezratty owed such a duty is a "threshold matter." *See* USMC Memo of Law at 6.

Consequently, for the same reasons discussed above, the Court finds that the lack of a duty owing from Ezratty to USMC precludes liability on any of the asserted theories of common law indemnification. Accordingly, Ezratty's motion, to the extent it seeks to dismiss the Twenty–Fifth, Twenty–Sixth, Twenty–Seventh, and Twenty–Eighth Causes of Action for failure to state a claim, is granted.

### III. Conclusion

Based on the foregoing, Ezratty's motion to dismiss the SATPC as against him is granted in its entirety. The Clerk of the Court is directed to amend the caption to remove the name of Ira A. Ezratty as a Cross–Defendant.

**SO ORDERED.**